DANIK, INC., Plaintiff,

v.

HARTMARX CORPORATION, et al., Defendants.

Civ. A. No. 83–3568–OG.

United States District Court, District of Columbia.

Feb. 26, 1988.

Order on Motion for Technical Amendment March 29, 1988.

Dale Cooter, H. Kenneth Kudon, Joseph Cahill, and Nicholas Hantzes, Washington, D.C., for plaintiff.

Richard J. Favretto, Marc Gary, Mary Ryan, and Rhonda Schwartz, Washington, D.C., for defendants.

MEMORANDUM

GASCH, Senior District Judge.

This case is before the Court on defendants' motion for the imposition of sanctions

for violation of Rule 11 of the Federal Rules of Civil Procedure. Defendants' contention is that plaintiff and its counsel violated Rule 11 by not making a reasonable inquiry into the facts prior to the filing of the case and by interposing the complaint for an improper purpose.

## I. BACKGROUND

This case was one of four cases involving Danik, Inc. that, at one time or another, have been before this Court. Danik is a Washington, D.C. corporation that owns and operates Dash's Designer retail clothing stores. Defendants are the Hartmarx Corporation and Hickey–Freeman Co., Inc. and Hart, Schaffner & Marx, two Hartmarx subsidiaries. All of the defendants engage in the manufacture and distribution of men's apparel.

The complaint in this case was a class action brought by Danik on behalf of "all men's retail clothing merchants in the United States other than those that are exclusive agents of the defendants ... for the sale of Hart, Schaffner and Marx suits." The complaint asserted that the defendants established "an exclusive retailer agency policy whereby Defendants will only sell Hart, Schaffner & Marx and Hickey–Freeman men's suits to one retailer in each major metropolitan area in the United States" upon the agreement that such suits will be sold "at the Defendants' suggested retail price or at an artificially high price." The defendants and their retailer coconspirators were alleged to have engaged in illegal price-fixing, territorial restrictions, resale price maintenance, and other unfair competition practices in violation of Section 1 of the Sherman Act.

On January 27, 1984, defendants moved to dismiss the case for failure to state a claim. On February 2, 1984, defendants moved for Rule 11 sanctions. Danik opposed both motions. On April 30, 1984, before any action was taken on the Rule 12(b)(6) motion, plaintiff voluntarily dismissed the case. The Rule 11 motion was argued in open court on June 15, 1984.

## II. DISCUSSION

Rule 11 was amended in 1983 to impose higher standards of conduct upon parties, and their attorneys, who choose to litigate in federal courts. *See* Advisory Committee Notes to 1983 Amendment to Rule 11 ("Advisory Committee Notes"). In pertinent part, the amended Rule provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

"Unlike the pre-amendment Rule 11, which required a showing of subjective bad faith, Rule 11 now incorporates, through its language 'formed after reasonable inquiry,' an objective test." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1177 (D.C.Cir. 1985); *see also Hashemi v. Campaigner Publications, Inc.*, 784 F.2d 1581 (11th Cir. 1986); *Zalvidar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986); *Eastway Construction Co. v. City of New York*, 762 F.2d 243 (2d Cir.1985). If a court finds a violation, "Rule 11 *requires* that sanctions of some sort be imposed." *Westmoreland*, 770 F.2d at 1174–75 (emphasis in original).

### A. *Investigation of Factual Allegations of the Complaint*

Defendants first contend that plaintiff and its counsel failed to make a reasonable inquiry before alleging that defendants maintained an exclusive retailer agency policy that limited sales of Hart, Schaffner and Marx and Hickey–Freeman suits to one retailer in each major metropolitan area in the United States. Defendants also assert that no reasonable inquiry was made into the allegations of price-fixing, territorial restrictions, resale price maintenance, or other unfair competition practices.

Defendants have submitted affidavits stating that Hart, Schaffner and Marx suits are distributed to more than one retailer in each of fifteen major metropolitan areas save Washington, D.C. The affidavits also reveal that, except in Washington, D.C. and Baltimore, Maryland, Hickey–Freeman suits are sold to more than one retailer in each of the same fifteen major metropolitan areas.[1] The affidavits deny the existence of any exclusive retail agency policy, price-fixing, or resale price maintenance as to either Hart, Schaffner and Marx or Hickey–Freeman suits.

In addition, defendants cite the testimony of Manoochehr John Dashtara, president of Danik, who signed an affidavit in the complaint which stated that the facts set forth in the complaint were true to the best of his knowledge, information, and belief. In a deposition taken on February 29, 1984, Dashtara stated that he relied wholly upon the representations of counsel and conducted no independent review of the factual allegations of the complaint.

In its opposition, plaintiff states that the investigation of the factual basis for this case had its inception in another case involving Danik. In *Intercontinental Apparel, Inc. v. Danik, Inc.*, No. 83–1579, also assigned to this Court, a Hartmarx subsidiary sued Danik for collection of $108,000 due for sale of menswear. Danik counterclaimed, alleging that Intercontinental had engaged in price discrimination in violation of the Robinson–Patman Act.[2]

Plaintiff's counsel states that, during discovery in No. 83–1579, he "became aware of the possible existence of an exclusive retail agent policy" for Hart, Schaffner and Marx and Hickey–Freeman suits because Danik had been unsuccessful in its at-tempts to purchase those lines of menswear. Investigation then led counsel to conclude, correctly, that these lines of menswear were sold only by one retailer in the Washington, D.C. area.

Accordingly, plaintiff's counsel instituted an investigation to determine whether there were exclusive retailing arrangements in other cities. The investigation consisted of telephone calls to retailers in four east coast cities by members of plaintiff's counsel's firm. A legal secretary placed calls to four retailers in New York City, spoke to salesmen, and was advised that the salesmen knew of only one store in the area that carried the Hart, Schaffner and Marx line of menswear. The secretary also contacted four retailers in Philadelphia, again spoke to salesmen, and was advised that the salesmen knew of only one store carrying the Hart, Schaffner and Marx line in that city. A lawyer in the firm telephoned several retailers in the Baltimore area and, after speaking to salesmen, was advised that they knew of only one retailer carrying Hart, Schaffner and Marx menswear. Additional calls were placed to retailers in the Washington, D.C. area.[3] Insofar as is established by the record, these telephone calls were the extent of plaintiff's investigation of the factual basis for the complaint.

Determination of whether an objectively reasonable pre-filing inquiry has been made will focus upon the circumstances of the case. *See Westmoreland*, 770 F.2d at 1177; *Duncan v. WJLA–TV, Inc.*, 106 F.R.D. 4, 6 (D.D.C.1984). Factors to be considered include how much time for investigation was available to the signer of the pleading and whether counsel had to

---

**1.** The major metropolitan areas cited in the affidavits are New York City, Los Angeles/Long Beach, Chicago, Philadelphia, Detroit, Boston, Washington, D.C., San Francisco, Houston, Dallas, St. Louis, Nassau/Suffolk, New York, Atlanta, Pittsburgh, and Baltimore.

**2.** The Court entered judgment for Intercontinental on its collection claim on March 21, 1984. Danik's counterclaim was tried to a jury, which returned a verdict in favor of Intercontinental on February 22, 1985. The court of appeals rejected Danik's appeal of that verdict on Febru-ary 5, 1986. *Intercontinental Apparel, Inc. v. Danik, Inc.*, 784 F.2d 1131 (D.C.Cir.1986).

**3.** Affidavits submitted by defendants state that Hart, Schaffner and Marx menswear was distributed to three retailers in New York City, seven retailers in Philadelphia, two retailers in Baltimore, and one retailer in Washington, D.C. The affidavits also assert that Hickey–Freeman menswear was distributed to twenty retailers in New York City, three retailers in Philadelphia, one retailer in Baltimore, and one retailer in Washington, D.C.

rely upon a client for information as to the facts underlying the pleading. *See* Advisory Committee Notes. The district court's determination is "accorded wide discretion" because the court "has tasted the flavor of the litigation and is in the best position to make these kinds of determinations." *Westmoreland,* 770 F.2d at 1174.

◼ In this case, the conduct of plaintiff and its counsel presents a strong case for imposition of Rule 11 sanctions. Here plaintiff advanced serious allegations that defendants committed sweeping nationwide violations of antitrust laws. An objective review indicates that plaintiff's pre-filing inquiry into the facts underlying these allegations was grossly inadequate.

Plaintiff's case rested primarily upon the allegation that the defendants maintained exclusive retail agency agreements in every major metropolitan area in the United States. The inquiry into the factual basis for this claim consisted solely of plaintiff's own inability to purchase Hart, Schaffner and Marx and Hickey–Freeman clothing and telephone calls to clothing salesmen in a limited, randomly selected number of retail stores in four east coast cities. This investigation has two obvious deficiencies. First, it concentrated solely upon Hart, Schaffner and Marx menswear and thus in no way justified the claim of exclusive retail agency arrangements for Hickey–Freeman apparel. Second, it was limited to four eastern cities and consequently provides no support for the allegation that exclusive arrangements existed in *every* major metropolitan area.

In addition, counsel's random telephone investigation is far removed from the type of systematic inquiry needed to conclude that allegations of the severity alleged by plaintiff are "well grounded in fact." Plaintiff's counsel contacted only a few retailers in cities where dozens of retailers were in business. Plaintiff sought the opinion of salesmen instead of management personnel who might have personal knowledge of the alleged exclusive retail agency policy. These flaws in plaintiff's investigation make it difficult to find a "reasonable

inquiry" with respect to the exclusive retail agency allegations.

◼ Even more telling is the absence of anything in the record to suggest that plaintiff made any investigation into its claims of illegal price-fixing, territorial restraints, or resale price maintenance. This lapse is of great significance because it is well established that exclusive retail agency policies, by themselves, are not per se violative of antitrust laws. *See, e.g., Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); *Smith v. Northern Michigan Hospitals, Inc.,* 703 F.2d 942 (6th Cir.1983). Rather, exclusive retailing arrangements are analyzed by the "rule of reason," whereby the trier of fact weighs the circumstances of the case to determine whether the restrictive practice imposes an unreasonable restraint on competition. *See Continental T.V., Inc.,* 433 U.S. at 49, 97 S.Ct. at 2557. Thus, plaintiff was required to plead, and show, anticompetitive effects of the exclusive retail agency policy, such as price-fixing or resale price maintenance, in order to prevail. *See, e.g., Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705 (11th Cir.1984) (per curiam); *JBL Enterprises, Inc. v. Jhirmack Enterprises, Inc.,* 698 F.2d 1011 (9th Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 106, 78 L.Ed.2d 109 (1983). Thus, insofar as is shown in the record, plaintiff failed to make any investigation whatsoever into the factual basis for allegations that were necessary elements of a successful claim.

The evidence suggests that plaintiff conducted an objectively insufficient investigation into its claim of a nationwide exclusive retail agency policy and no inquiry at all into other necessary elements of its case. In cases where the inquiry into the factual basis for a complaint has been similarly inadequate, courts have not hesitated to find Rule 11 violations. *See, e.g., City of Yonkers v. Otis Elevator Co.,* 106 F.R.D. 524 (S.D.N.Y.1985); *Filippini v. Austin,* 106 F.R.D. 425 (C.D.Cal.1985); *United Food and Commercial Workers v. Armour and Co.,* 106 F.R.D. 345 (N.D.Cal. 1985). *Cf. Wymer v. Lessin,* 109 F.R.D.

114 (D.D.C.1985); *Weil v. Markowitz*, 108 F.R.D. 113 (D.D.C.1985). There is nothing to suggest that the paucity of plaintiff's pre-filing inquiry was necessitated by time constraints, and Dashtara's deposition testimony reveals that plaintiff's counsel was not relying on the factual representations of the client. *See* Advisory Committee Notes.

Plaintiff's counsel does offer two circumstances which may be viewed as mitigating the inadequacy of the investigation. First, plaintiff notes the general rule that, "in antitrust cases, where 'the proof is largely in the hands of the alleged coconspirators,' *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Thus, plaintiff argues, plaintiffs in antitrust cases should be held to a less stringent standard under Rule 11 because of the difficulty in discovering relevant facts prior to the filing of a complaint.

■ There are several responses to this argument. First, courts have noted that, even in complex antitrust cases, plaintiffs may not "rely[ ] on bare allegations coupled with the hope that something could be developed at trial to support those allegations." *Kreuzer v. American Academy of Periodontology*, 735 F.2d 1479, 1496 (D.C. Cir.1984). Indeed, the Supreme Court has refused to establish a rule "that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1967); *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Antitrust plaintiffs, therefore, are required to establish some factual basis for their claims, notwithstanding the discovery difficulties they may encounter.

Second, the cases cited by plaintiff all address the use of summary procedures to dispose of cases, and all predate the 1983 amendments to Rule 11. The only Rule 11 case cited by plaintiff in this context utilized the subjective test of the pre–1983 rule. *See In Re Mid–Atlantic Toyota Antitrust Litigation*, 525 F.Supp. 1265, 1282–83 (D.Md.1981). As such, the cases cited by plaintiff have little relevance to the determination of whether a litigant has made a reasonable pre-filing inquiry into the factual basis for his antitrust claims.

Rule 11 obligates litigants and their counsel to examine the factual basis for their allegations and to "stop and think" before filing a pleading. *Duncan v. WJLA–TV, Inc.*, 106 F.R.D. at 6. As one court recently noted:

> Rule 11 is designed to insure that allegations made in a complaint ... are supported by a sufficient factual predicate *at the time that the claims are asserted.* It is thus no answer to a motion seeking Rule 11 sanctions ... to suggest that plaintiffs needed discovery to ascertain whether the claim asserted was well founded.

*City of Yonkers v. Otis Elevator Co.*, 106 F.R.D. at 525 (emphasis in original); *see also Weil v. Markowitz*, 108 F.R.D. at 116. There is nothing to indicate that antitrust plaintiffs are exempted from conducting the reasonable pre-filing inquiry mandated by Rule 11.

■ The second mitigating circumstance cited by plaintiff involves communication between the parties prior to the filing of this case. Plaintiff's counsel contacted defendants' counsel to advise them that Danik was contemplating filing this suit and sent copies of the complaint to defendants' counsel for their consideration. Plaintiff's counsel later discussed the case with defense counsel with the apparent intent of initiating settlement discussions as to the claims in this case and those in No. 83–1579. Defendants' counsel responded that they were not interested in such discussions and that, if plaintiff wanted to pursue its claims, it should file its complaint.

Plaintiff's counsel asserts that at no point during these pre-filing contacts did defendants' counsel expressly deny the factual allegations of the complaint. As such, plaintiff's counsel argues that the lack of a denial inferentially supported plaintiff's belief that its factual allegations were "well grounded in fact."

Research has uncovered no Rule 11 cases which involved similar circumstances. It may be argued that, by giving defendants a pre-filing opportunity to deny the factual allegations in the complaint, plaintiff was engaging in the type of careful investigation that Rule 11 requires. Several factors weigh against this conclusion, however. First, plaintiff's counsel apparently never asked defense counsel about the factual basis for the complaint; rather, plaintiff's sole purpose in forwarding the complaint evidently was to encourage settlement of all disputes between the parties. It, therefore, is difficult to construe defendants' failure to deny the factual allegations as an implicit acknowledgement of their truth. Second, plaintiff's counsel admitted during the oral argument of this motion that defendants had, in substance, previously denied similar allegations of antitrust violations. Indeed, plaintiff's counsel stated that, even had defendants expressly denied the factual allegations, he likely would not have believed them. Third, accepting plaintiff's argument could effectively shift the burden of compliance with Rule 11. In every case in which advance notice of a lawsuit was provided, the party receiving such notice would be required to make point-by-point denials of the complaint's factual allegations or risk waiving the ability to seek Rule 11 sanctions. Neither the language nor the purpose of the 1983 amendments to Rule 11 supports such a result.

### B. *Selection of Sanctions*

Because the Court concludes that Rule 11 has been violated, the imposition of sanctions is required. *See Westmoreland,* 770 F.2d at 1174–75. The selection of an appropriate sanction, however, is left to the discretion of the district court. *Id.* at 1178. Rule 11 provides for an award of expenses "incurred because of the filing of the pleading, motion, or other paper." Thus, courts typically require the party who has violated Rule 11 to compensate the opposing party for his attorneys' fees and costs related to responding to the improper pleading. *See Westmoreland,* 770 F.2d at 1178–79; *Eastway Construction Corp. v. City of New York,* 762 F.2d at 254 n. 7; *Hudson v. Moore Business Forms, Inc.,* 609 F.Supp. 467, 484–85 (N.D.Cal.1985).

■ The Court has carefully reviewed the detailed statement of attorney's fees and expenses submitted by defendants and concludes that the amount requested is excessive. From the outset of this case, defendants insisted that no foundation existed for plaintiff's allegations. Nevertheless, defendants' counsel launched a full-scale assault on all the legal issues raised by the complaint. Five attorneys and additional paralegals spend countless hours researching a variety of antitrust, class certification, Rule 11, and factual issues; however, the results of much of that research were not reasonably necessary to achieve dismissal of the case. Such a response was unreasonably disproportionate.

Particularly unreasonable were defendants' research efforts regarding class certification. While the issue might ultimately have been presented for the Court's determination, defendants' insistence that plaintiff had failed to state a claim rendered the certification issue secondary. Legal efforts regarding that issue would have been appropriate only after plaintiff's complaint survived a 12(b)(6) challenge, which it did not.

In addition, the Court finds excessive the staffing of this case by defendants' counsel and the amount of research effort devoted to the Rule 11 issue and motion to dismiss. The repeated travels of one associate from Chicago to Washington seem especially unreasonable. This associate's many hours of research and writing on Rule 11 and the repeated review of his work by at least three other attorneys unjustifiably multiplied the amount of effort required to produce a superior brief on this issue.

For the reasons outlined above, the Court finds that an award of $32,103.78 is appropriate as a sanction for violation of Rule 11.

■ The sole remaining question is apportionment of the sanction. As plaintiff's counsel noted, plaintiff relied entirely on the advice of its attorneys in prosecuting this case. However, a party is not absolved of responsibility under Rule 11 simply because he is ignorant of the law. Danik authorized the prosecution of this lawsuit albeit on the advice of counsel and must assume some of the burden of sanctions. For this reason, counsel for Danik— the law firm of Cooter & Gell—will be assessed a sanction of $21,402.52 and Danik will be required to pay the remaining amount of $10,701.26. Because counsel for Hartmarx has already been paid its fees, the sanctions shall be paid directly to Hartmarx.

## III. CONCLUSION

The Court concludes that, under the objective test used in assessing Rule 11 motions, plaintiff failed to make a "reasonable inquiry" into the factual allegations contained in the complaint. The record establishes that plaintiff made an inadequate investigation of its claim that defendants maintained an exclusive retailer agency policy, and that plaintiff made no investigation into its claims of price-fixing, resale price maintenance, and other anticompetitive practices. While Danik's counsel is primarily responsible for this neglect, Danik authorized this lawsuit and must bear a portion of the sanction.

### ORDER

Upon consideration of defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11, the oppositions thereto, and the record herein, and for the reasons stated in the accompanying memorandum, it is this 25th day of February, 1988

ORDERED that defendants' motion be, and hereby is, granted; and it is further

ORDERED that the law firm of Cooter & Gell shall forthwith pay to the Hartmarx Corporation Twenty–One Thousand Four Hundred Fifty–Two Dollars and Fifty–Two Cents ($21,452.52) as a sanction for violating Federal Rule of Civil Procedure 11; and it is further

ORDERED that Danik, Incorporated shall forthwith pay to the Hartmarx Corporation Ten Thousand Seven Hundred One Dollars and Twenty–Six Cents ($10,701.26) as a sanction for violating Federal Rule of Civil Procedure 11.

### ORDER ON MOTION FOR TECHNICAL AMENDMENT

The Motion of Danik, Inc. for Technical Amendment of the Memorandum dated February 25, 1988, having come before the Court without opposition of Hartmarx Corporation, it is hereby ORDERED that the said Memorandum shall be amended to reflect that H. Kenneth Kudon was not in the law firm of Cooter & Gell and did not represent Danik at the time the complaint was prepared or filed in the captioned case, and did not violate Rule 11 of the Federal Rules of Civil Procedure.