RIMM, J.T.C.
In this local property tax matter, defendant municipality moves for the imposition of legal fees and expenses under the Frivolous Claims Statute, N.J.S.A. 2A:15-59.1 (the statute), following a letter withdrawing the complaint.
The subject of this litigation is the Harbor Village Square Shopping Center, Zion Road and Ocean Heights Avenue. It is designated as E0055.E, Lot 4, and for the tax year 1989 was assessed as follows:
Land $ 151,500
Improvements 1,260,500
Total $1,412,000.
On appeal to the Atlantic County Board of Taxation, the assessment was sustained by a judgment dated September 29, 1989 and mailed on October 20, 1989. The taxpayer was dissatisfied with the county board judgment, and he filed a complaint with the Tax Court on December 6, 1989 seeking a reduction in his assessment.
On September 6, 1990, 11 days before the postponed trial date of September 17, 1990, counsel[1] for plaintiff wrote a letter withdrawing the complaint. On September 10, 1990, before the letter withdrawing the complaint could be processed for the dismissal of the complaint, defendant filed a motion, returnable on the trial date of September 17, 1990, by which it sought the following relief: an order denying plaintiff the right to withdraw his complaint; the right to amend its answer to include a *422 counterclaim; and reimbursement for its legal fees and expenses incurred in the defense of this matter under the statute.
Following the filing of the complaint, defendant filed an answer on January 18, 1990, without a counterclaim. On March 23, 1990, the Clerk of the Tax Court sent a case management notice to both attorneys notifying them that the discovery completion date was April 25, 1990; the exhibit exchange date was May 23, 1990; and the trial date was June 20,1990. On April 19,1990, defendant sent its trial information sheet to the court and on April 20, 1990, plaintiff sent his trial information sheet to the court. In his trial information sheet, plaintiff listed Robert A. Goldberg as his expert witness. Thereafter, the original case management schedule was extended with a discovery completion date of July 23, 1990; an exhibit exchange date of August 20, 1990; and a trial date of September 17, 1990.
In support of its motion, defendant supplied to the court a copy of a letter, dated February 28, 1990, sent by its counsel to counsel for plaintiff. In the letter, defendant seeks to discuss settling the case with an increase in the assessment. In the letter, defendant’s counsel points out that its appraiser advises “that the subject assessment is so far under value that he cannot understand the logic of the property owner in calling this case to the township’s attention.” The letter also said:
[Our expert] has advised me of the results of his preliminary analysis, which resulted in a market value of $2,750,000. This analysis would indicate an assessment of $2,282,500, using the Chapter 123 “average ratio” of 83% for 1989. The current assessment of the subject property of $1,412,000 is well below the common level range, which would dictate a substantial increase in the assessment.
Plaintiff’s counsel never responded to the letter. Defendant also submitted to the court its appraisal dated June 9, 1990, in which defendant’s appraiser expressed the opinion that the market value of the subject property as of October 1, 1988, for the tax year 1989, was $2,302,000. If this value were sustained at trial, the assessment for the tax year 1989 would be increased by $509,000 based on the chapter 123 ratio for Egg Harbor Township for 1989 of 83.45%, with a lower limit of *423 70.93% and upper limit of 95.97%. A copy of the appraisal was sent to plaintiffs counsel on August 20, 1990, the postponed appraisal exchange date.
At the time of the hearing on defendant’s motion, I asked counsel for plaintiff what action was taken to engage an appraiser. Counsel answered that he had received defendant’s counsel’s letter of February 28, 1990. He then said:
We just called our appraiser, Mr. Goldberg, and he inspected the property and sought information. He told us that he could show us a value of less than the assessment but not lower than the common level which is stated in the letter.
A value “less than the assessment,” if proved at trial, would have disposed of the case in plaintiff’s favor by resulting in a reduction in the assessment. N.J.S.A. 54:51A-6.b. Counsel’s imprecise expression meant that the value of the property was not low enough to produce a ratio of the assessed value to the true value which would afford relief under chapter 123. N.J.S.A. 54:51A-6.a. The words “a value ... not lower than the common level which is stated in the letter,” a specific reference to the letter of February 28, 1990, meant that the value would produce a ratio of the property’s assessment to the true value within the common level range. The range was readily ascertainable from defendant’s counsel’s letter even without reference to the Certification of Average Ratios and Common Level Ranges for Use in the Tax Year 1989 (Div. of Taxation April 1, 1989). Yet, counsel did not respond to the February 28, 1990 letter; plaintiff did not withdraw his complaint; plaintiff permitted the municipality to continue with its defense; and plaintiff continued his claim for relief in bad faith with the full knowledge that his complaint was without any basis for success in lowering the assessment affirmed by the Atlantic County Board of Taxation.
When pressed further concerning what action plaintiff had taken to have an appraisal prepared in time for the original exchange date of May 23, 1990, or in connection with the postponed exchange date of August 20, 1990, counsel replied:
No, we never received an appraisal report. We received the defendant’s appraisal report which we passed on to our appraiser. After he read that, he was convinced that a reduction would not be warranted____ I can’t tell you *424 exactly why the appraisal was not done on time, in accordance with the case management notice, but once we received the defendant’s appraisal, he read that thoroughly and then issued his opinion in that the reduction was not warranted____ We never received an appraisal.
Counsel then said that he ordered an appraisal but was told that an appraisal would not be necessary because plaintiffs case had no merit. He was told that shortly before he withdrew the complaint.
In addition to these facts presented by plaintiff’s counsel at oral argument, he delivered to the court at the time Qf the hearing a one and one-half page letter signed by Goldberg and dated September 14,1990, eight days after the date of counsel’s letter withdrawing the complaint. In the letter addressed to plaintiff’s counsel, among other things, Goldberg said that:
■ In response to your inquiry regarding the tax appeal of the above referenced property, it is my opinion that the property had a fair market value, as of October 1, 1988, in the amount of $1,762,000. Based upon this appraisal, I recommend that the taxpayer does not pursue its appeal pending before the Tax Court____ I recommend that the taxpayer withdraw its 1989 tax appeal.
It would appear from Goldberg’s letter that he is responding to an inquiry made of him only immediately prior to his letter of September 14, 1990 at a time when he must have been told by plaintiff’s counsel that plaintiff’s complaint was still pending before the Tax Court. Yet, again, plaintiff’s counsel had this information following the February 28, 1990 letter, but permitted the matter to continue.
Plaintiff’s counsel also argues that defendant municipality had an obligation to show that no reduction in plaintiff’s assessment was warranted. At the same time, counsel acknowledges that plaintiff did not fulfill its obligation in preparing his appraisal report.
The first consideration in dealing with these facts and the relief sought by defendant is R. 8:3-9 which provides that “a complaint or a counterclaim may be withdrawn at any time prior to the close of proofs before the Tax Court and thereafter with leave of Court.” This rule departs from the Superior Court practice by permitting a unilateral withdrawal of a complaint or a counterclaim whether or not a responsive pleading *425 has been filed. Pressler, Current N.J. Court Rules, Comment R. 8:3-9 (1991). The Tax Court has interpreted the rule in accordance with its “express language.” Cherry Hill Tp. v. U.S. Life Ins. Co. of New York, 1 N.J.Tax 236, 422 A.2d 810 (Tax Ct.1980). The rule was adopted to permit “any party to withdraw an appeal ‘at any time prior to the close of proofs’.” Id. at 243, 422 A.2d 810. Accordingly, so much of defendant’s motion which seeks to prevent plaintiff from withdrawing its complaint is denied.
The second aspect of defendant’s motion is closely related to the issue of the withdrawal of the complaint. Defendant seeks leave to file an amended answer and counterclaim. Defendant did file an answer admitting certain allegations of the complaint; denying other allegations; leaving plaintiff to his proofs on yet other allegations; and demanding judgment in its favor dismissing plaintiff's complaint. No counterclaim was filed with the answer.
 In addition to denying defendant’s motion to prohibit plaintiff’s withdrawal in the U.S. Life Ins. Co. case, the court also denied defendant’s motion for leave to file a counterclaim because such leave was sought beyond the time for filing claims in the Tax Court. Ibid. Similarly, defendant in the present matter is out of time for filing a counterclaim. The filing of claims with the Tax Court under the facts of this case, either by way of complaint by plaintiff or by way of a counterclaim by defendant, is controlled by the provisions of N.J.S.A. 54:51A-l.a. and -9.a. The former statute provides that: “any party who is dissatisfied with a judgment, action or determination of the county board of taxation may seek review of that judgment, action or determination in the Tax Court by filing a complaint in the Tax Court, pursuant to rules of Court.” The latter statute provides that: “[ejxcept as otherwise provided in this section, a complaint seeking review of adjudication or judgment of the county board of taxation shall be filed within 45 days of the service of the judgment.” Either a taxpayer or a municipality, dissatisfied with the judgment of a county board *426 of taxation, may file a complaint in the Tax Court to review the judgment within 45 days of the service of the judgment, pursuant to rules of court. Defendant municipality did not seek review of the county board’s judgment in this matter within the time provided for in the statute by either filing a complaint on its own or by filing a counterclaim to the taxpayer's complaint within the statutory filing deadline. Such filing deadlines are considered statutes of limitation in the Tax Court and are strictly enforced. Tolentino v. Oxford Tp., 4 N.J.Tax 173 (Tax Ct.1982); Bass River Tp. v. Driscoll, 3 N.J.Tax 177 (Tax Ct.1981).
With regard to the filing of a counterclaim to a complaint from a judgment of a county board of taxation, there is no additional time beyond the 45-day period for seeking review of a county board judgment, unlike the provisions of N.J.S.A. 54:3-21 which permit additional time beyond August 15 for the filing of a counterclaim when there has been a direct appeal filed with the Tax Court. In dealing with this extension period, Judge Lario said in Cumberland Holding Corp. v. Vineland, 11 N.J.Tax 457 (Tax Ct.1991), that “because the right to appeal is prescribed by statute, both taxing districts and appealing taxpayers are required to comply with its time limitations and the doctrine of relaxable court rules is not applicable. Failure to file a timely appeal is a fatal jurisdictional defect.” Id. at 460. The statutory extension in N.J.S.A. 54:3-21 fixed a deadline which could not be modified. The same reasoning applies to the case presently before the court. No timely counterclaim was filed by defendant; there is no right on the part of defendant to file a counterclaim out of time; and defendant’s motion for leave to file a counterclaim out of time is denied.
Under all of the circumstances of this case, however, defendant is entitled to relief under the Frivolous Claims Statute N.J.S.A. 2A:15-59.1. That statute adopted in 1988 by L. 1988, c. 46,[2] provides as follows:
*427 a. A party who prevails in a civil action either as a plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceeding or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
b. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
(1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
There is also a subparagraph c. which provides for the application to be made to the court which heard the matter.
First, defendant has prevailed in this action. Plaintiff filed a two-count complaint. The first count alleges that the assessment is in excess of the true or assessable value of the property. The second count alleges that the property was not assessed “at a lawful relationship to the common level or average ratio applicable in the taxing district which is 83.45%.” Both counts demand a reduction in the assessment to the true value of the property and such other relief as may be appropriate. As already indicated, defendant filed an answer, seeking a dismissal of the complaint. Plaintiffs withdrawal of the complaint is tantamount to a dismissal; defendant has obtained the relief that it sought by its answer; and defendant is the prevailing party in this civil action. Plaintiff is certainly a “nonprevailing person.” Chernin v. Mardan, 244 N.J.Super. 379, 383, 582 A.2d 847 (Ch.Div.1990). See Iannone v. McHale, 245 N.J.Super. 17, 583 A.2d 770 (App.Div.1990) (Defining a *428 prevailing party is a problem in interpreting the frivolous litigation statute.)[3]
This definition aids in accomplishing the purpose of the statute, namely, to deter groundless suits. Imposing sanctions after a dismissal, or, in this case, a withdrawal, is also consistent with the interpretation by the Federal Courts of Fed.R.Civ. P. 11, on which our statute is based. As Judge Pressler said in Iannone, “[c]learly this provision was patterned after the 1983 amendment of Fed.R.Civ.P. 11, whose purpose, as explained by the Advisory Committee notes, was essentially the same, namely, deterring groundless suits.” Id. at 25, 583 A.2d 770.
In Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), the United States Supreme Court held that a “voluntary dismissal did not divest the District Court of jurisdiction to consider” a motion under Fed.R.Civ.P. 11 for sanctions requiring the payment of costs and attorney’s fees. The Court quoted the court of appeals which said, “the policies behind Rule 11 do not permit a party to escape its sanction by merely dismissing an unfounded case____ [Such sanctions must] be available in appropriate circumstances notwithstanding a private party’s effort to cut its losses and run out of court____” Danik, Inc. v. Hartmarx Corp., 277 U.S.App.D.C. 333, 337-338, 875 F.2d 890, 894, 895 (1989). Applying the reasoning of Cooter & Gell to the present case, if a litigant could purge his violation of our statute by merely dismissing his case, “he would lose all incentive to stop, think and investigate more carefully before” continuing his action. See Cooter & Gell, 496 U.S. at 399, 110 S.Ct. at 2457, 110 L.Ed.2d at 377.
*429 Second, the statute provides for two alternative bases for determining if a complaint, counterclaim, cross-claim or defense of a non-prevailing party was frivolous. Plaintiffs complaint is frivolous on the basis of both of the alternative statutory provisions. The complaint was “continued in bad faith, solely for the purpose of” harassing or delaying defendant. In dealing with this aspect of the statute, I note that my finding that the complaint was frivolous is not based on the provision of the statute which says that a complaint is frivolous if it “was commenced ... in bad faith.” Such a determination in the Tax Court could have a chilling effect on both taxpayers and municipalities who seek relief in the Tax Court either by way of a direct appeal or by way of the filing of a complaint seeking review of a county board judgment in local property tax matters.
There are short time constraints for the commencing of an action in the Tax Court. Statutory deadlines are strictly enforced and late filings deprive the court of jurisdiction and deny a party its day in court. Even so, there may be circumstances in which commencing an action in the Tax Court may be frivolous. However, once the complaint is filed or “commenced,” the emphasis shifts to continuing the complaint. A party has a continuing obligation to review, re-examine and reevaluate its position during the pendency of litigation. Sjogren, Inc. v. Caterina, Inc., 244 N.J.Super. 369, 582 A.2d 841 (Ch.Div.1990)
The complaint was filed on December 6, 1989. By letter dated February 28, 1990, defendant sought to discuss settlement with plaintiff. By case management notice dated March 23,1990, plaintiff was advised of a discovery completion date of April 25, 1990, an exhibit exchange date of May 23, 1990 and a trial date of June 20, 1990. On June 19,1990, the various dates were extended, and the discovery completion date was July 23, 1990, the exhibit exchange date was August 20, 1990 and the trial date was September 17, 1990.
*430 In a telephone conversation between counsel for plaintiff and counsel for defendant which took place during the week of August 27, 1990, counsel for plaintiff promised counsel for defendant that he would “get back” by the end of the week regarding the exchange of exhibits. So as late as that week, plaintiffs counsel made statements to defendant’s counsel on the exchange of appraisals which were misleading.
Thereafter, on September 6, 1990, counsel for plaintiff advised counsel for defendant that plaintiff did not believe he could support his appeal and would be withdrawing his complaint. The letter of withdrawal of September 6,1990 followed. Yet, at no time prior to September 6, 1990 did plaintiff obtain an appraisal. At no time prior to September 6, 1990 did plaintiff attempt to ascertain the validity of his claim that his property’s assessment should be reduced.
The claim in this case was without merit, and continuing the litigation had the effect of harassing defendant by causing it to expend its money and the time and effort of its employees and officials to deal with the litigation. Defendant municipality was also caused to expend sums of money for attorney’s fees, appraiser’s fees and other costs of unnecessary litigation. The continuing of the litigation by plaintiff further delayed the municipality in the disposition of its business by requiring it to deal with a claim lacking in merit.
Plaintiff also knew or should have known, as early as his receipt of defendant’s letter of February 28, 1990, if not before, that his complaint was without any reasonable basis in law or equity and that it could not be supported by a good faith argument for an extension, modification or reversal of existing law. “ ‘A claim or defense is frivolous or groundless where no rational argument can be advanced in its support, or it is not supported by any credible evidence, or a reasonable person could not have expected its success, or it is completely untenable.’ ” Fagas v. Scott, supra, 251 N.J.Super. at 189, 597 A.2d 571 (quoting from 20 C.J.S., Costs, § 128 at 109). As a matter of fact, plaintiff knew or would have known that his complaint *431 was without any such reasonable basis if he had taken reasonable steps following the filing of his complaint on December 6, 1989 to determine the worth and validity of his claim and to determine if his claim that his property was overassessed had any merit.
Plaintiff also advances the proposition that defendant municipality must show that he is not entitled to a reduction. This is contrary to long-established law in this State not likely to be changed, because it is based on sound principles of public policy. There is in favor of every assessment, and of every county board judgment, a presumption of correctness based on the proposition that government acts in a proper and correct manner. Pantasote Co. v. Passaic, 100 N.J. 408, 413, 495 A.2d 1308 (1985). The presumption is overcome by clear and convincing evidence of value on the basis of which an assessment can be found other than the original assessment, or in this case, the county board judgment. Aetna Life Insurance Co. v. Newark, 10 N.J. 99, 105, 89 A.2d 385 (1952); Riverview Gardens v. North Arlington, 9 N.J. 167, 175, 87 A.2d 425 (1952). In addition, in this type of litigation, the burden of proof is on plaintiff to prove by a preponderance of the credible evidence that he is entitled to the relief he seeks. Rumson v. Peckham, 7 N.J. Tax 539 (Tax Ct.1985). The burden is not on the municipality to prove that the property owner is not entitled to a reduction, and the municipality need not go forward with its proof until the taxpayer has presented his case.
Continuing plaintiff’s complaint burdened the office of the Clerk of the Tax Court and my staff with unnecessary administrative work. All of this led to the unnecessary clogging of the court system, burdening of attorneys and delay in the orderly disposition of cases in the Tax Court. Continuing a baseless matter unnecessarily continues “the machinery of justice in motion, burdening the courts and individuals alike with needless expense and delay.” Cooter & Gell, 496 U.S. at 398, 110 S.Ct. at 2457, 110 L.Ed.2d at 377. Cf. Somerset Trust Co. v. Sternberg, 238 N.J.Super. 279, 569 A.2d 849 (Ch.Div.1989) (for *432 a discussion of frivolous defenses in mortgage foreclosure actions as clogging the judicial system.)
Defendant is awarded reasonable litigation costs and reasonable attorneys fees under N.J.S.A. 2A:15-59.1.a. Litigation costs will include appraiser’s fees. Expert witness’s fees are properly included in an award under the statute, Fagas v. Scott, supra, 251 N.J.Super. at 197, 597 A.2d 571; and in local property tax matters, the cost of hiring an appraiser and of having an appraisal prepared is a litigation cost properly recoverable under the frivolous claims statute. This is particularly so in the present case which involved a shopping mall.
A municipality has an obligation to take whatever steps áre reasonable to defend its assessments for the benefit of all of the taxpayers in the municipality. It is reasonable for a municipality to seek the assistance of an appraiser for its assessor and to have that appraiser prepare an appraisal to be submitted to opposing counsel and to testify in defense of a claim that an assessment is too high. Real estate valuation is a complicated process, and all parties to local property taxation should expect that appraisers will be hired and that the cost of such appraisers is a legitimate, proper litigation cost.
It should come as no surprise to experienced counsel in this matter than an appraiser was hired. In fact, plaintiff’s counsel argued that the municipality had an obligation to engage an appraiser to defend its position. This is an acceptable contention, but it is not acceptable as a defense against the award of litigation costs when plaintiff did nothing to prepare for this litigation, either by way of settlement discussions or trial preparation. Significantly, plaintiff ignored the directions of the Rules of Court, namely R. 8:6-1, and the case management notices, and at no time prior to the withdrawal of the complaint did plaintiff notify either defendant or the court that he did not intend to pursue this matter.
Counsel for defendant will prepare and submit an order under the five-day rule denying its application to prohibit the withdrawal of the complaint; denying its application to file a *433 counterclaim; but directing plaintiff to pay to defendant, within 30 days of the date of the order, reasonable litigation costs and reasonable attorneys fees in an amount to be fixed during a conference between counsel for plaintiff and counsel for defendant. If counsel cannot agree on such amount, I will fix the amount of such costs and fees upon submission to the court of an affidavit from defendant’s counsel indicating such fees and costs on notice to plaintiff.

"Counsel for plaintiff’ refers to the law firm representing plaintiff. Actually, three different members of the firm worked on this matter.

The statute was approved June 28, 1988, to take effect on the 180th day after enactment, or on December 26, 1988. It applies to causes of action filed on or after the effective date. The complaint in this matter was filed on December 6, 1989.

While the court in Iannone was presented with a constitutional challenge to the statute, it did not consider the challenge. Unlike Iannone, no constitutional challenge was presented in the case now before the court. However, Fagas v. Scott, 251 N.J.Super. 169, 597 A.2d 571 (Law Div.1991) held that the statute did "not infringe upon the Supreme Court’s constitutional exclusive power to define and regulate practice and procedure in all courts." Id. at 208, 597 A.2d 571. That court also said that the statute was not void for vagueness nor did it deny due process under the United States or New Jersey Constitutions.