267 N.J. Super. 14 (1993)
630 A.2d 794
WILLIAM S. THROCKMORTON, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF EGG HARBOR, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1993.
Decided August 4, 1993.
*16 Before Judges ANTELL, DREIER and VILLANUEVA.
Alan R. Hammer argued the cause for appellant (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Mr. Hammer, of counsel; David L. Wecht and Michael I. Schneck, on the brief).
Benjamin Zeltner argued the cause for respondent (Levine, Staller, Sklar, Chan & Brodsky, attorneys; Mr. Zeltner, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.S.C. (temporarily assigned).
Plaintiff appeals from the Tax Court's award of counsel fees and costs of $5,245 to defendant Township pursuant to N.J.S.A. 2A:15-59.1, the frivolous-claims statute, after plaintiff withdrew his complaint challenging the Township's assessment of his property. We reverse.
This case presents two issues: (1) whether N.J.S.A. 2A:15-59.1 (the "Act") applies to the Tax Court; and (2) whether the Tax Court judge properly awarded attorney's fees and costs.
*17 Plaintiff, a real estate investor and attorney, owns property in the Township of Egg Harbor ("Township") improved with a strip mall containing approximately 25,290 square feet of leasable area. Plaintiff filed a petition of appeal with the Atlantic County Board of Taxation challenging the assessment of $1,412,000, allocated land $151,500 and improvements $1,260,500, for the 1989 tax year. The county board affirmed the assessment. On November 29, 1989, plaintiff appealed the judgment by filing a complaint with the Tax Court.
By letter dated February 28, 1990, the Township offered to settle the appeal by increasing the assessment:
I am advised by the Township's appraisal consultant .. . that the subject assessment is so far under value that he cannot understand the logic of the property owner in calling this case to the Township's attention.
[He] has advised me of the results of his preliminary analysis, which resulted in a market value of $2,750,000. This analysis would indicate an assessment of $2,282,500, using the Chapter 123 "average ratio" of 83% for 1989. The current assessment of the subject property of $1,412,000 is well below the common level range, which would dictate a substantial increase in the assessment.
This case is certainly worth the Township's trying to conclusion.... We would, however, be willing to discuss settling this case for an increase less than $870,000, which we will be able to support at trial, if settlement can be accomplished in a timely fashion.
However, the appraisal report of the Township's expert issued six months later could not support this inflated value. The report valued the property at $2,302,000, which is $448,000 less than the Township originally indicated.
Plaintiff refused to settle the matter for any increase and instructed his attorney to continue prosecuting the case. On May 11, 1990, plaintiff's attorney contacted Robert Goldberg, an expert appraiser retained by plaintiff in this matter, requesting Goldberg to prepare an appraisal report for the subject property. He informed Goldberg of the upcoming exhibit exchange and trial dates. According to the case management order, the discovery completion date was April 25, 1990, and the exhibit exchange date was May 23, 1990. Trial was scheduled for June 20, 1990. On April 20, 1990, plaintiff sent his trial information sheet to the Tax Court, in which Goldberg was listed as an expert witness.
*18 Because neither party complied with the exhibit exchange date in the case management order, the trial court granted the Township's request to postpone the trial until September 17, 1990. The exhibit exchange date was adjourned to August 20, 1990. On June 19, 1990, plaintiff's attorney sent a letter to Goldberg in which he again requested an appraisal, and informed Goldberg that the trial had been adjourned until September 17, 1990.
On August 20, 1990, plaintiff received the Township's appraisal report dated June 9, 1990, and forwarded same to Goldberg. After review of the information and analysis in the report, Goldberg advised plaintiff's attorneys that he could not substantiate a value which would entitle the taxpayer to a reduction in the property's assessment. He advised that the case be withdrawn.[1]
By letter dated September 6, 1990, counsel for plaintiff wrote a letter withdrawing the complaint from the Tax Court. R. 8:3-9. On September 10, 1990, before the letter withdrawing the complaint could be processed for the dismissal of the complaint, the Township filed a motion for an order denying plaintiff the right to withdraw his complaint, or in the alternative, permitting the Township to amend its answer to include a counterclaim for discrimination relief under Chapter 123 of the Laws of 1973. In addition, the Township sought, pursuant to the Act, reimbursement for its legal fees and expenses incurred in defense of this matter.
*19 After the Tax Court heard oral argument on this motion on September 17, 1990, it denied the Township's request to file its counterclaim out-of-time and reserved decision on the other issues. No order was delivered to counsel at that time. By letter dated September 25, 1990, plaintiff supplemented the record with a letter outlining the various efforts made to obtain the appraisal from Goldberg. One and one-half years later, the Tax Court judge issued a written opinion, dated March 2, 1992, in which he denied the Township's request to prevent plaintiff from withdrawing his complaint, but found that the Township should be awarded reasonable attorneys' fees and costs under N.J.S.A. 2A:15-59.1. Throckmorton v. Egg Harbor Tp., 12 N.J. Tax 419 (Tax Court 1992). On April 16, 1992, an order was entered awarding the Township $5,245 for attorney's fees and costs. Plaintiff's motion for reconsideration was denied.
N.J.S.A. 2A:15-59.1 provides in pertinent part:
a. A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
b. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
(1) the complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
(2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.[2]
........
The stated legislative purpose in enacting the Act was to deter baseless litigation. Iannone v. McHale, 245 N.J. Super. 17, 25, 583 *20 A.2d 770 (App.Div. 1990), rev'g, 236 N.J. Super. 227, 565 A.2d 422 (Law Div. 1989).
The main issue is whether plaintiff's claim was, in fact, frivolous within the meaning of the Act. In holding that plaintiff's complaint was frivolous on the basis of both of the alternative statutory provisions, the Tax Court judge stated:
The claim in this case was without merit, and continuing the litigation had the effect of harassing defendant by causing it to expend its money and the time and effort of its employees and officials to deal with the litigation. Defendant municipality was also caused to expend sums of money for attorney's fees, appraiser's fees and other costs of unnecessary litigation. The continuing of the litigation by plaintiff further delayed the municipality in the disposition of its business by requiring it to deal with a claim lacking in merit.
Plaintiff also knew or should have known, as early as his receipt of defendant's letter of February 28, 1990, if not before, that his complaint was without any reasonable basis in law or equity and that it could not be supported by a good faith argument for an extension, modification or reversal of existing law.
[Throckmorton, supra, 12 N.J. Tax at 430.]
In denying plaintiff's motion for reconsideration, the judge added that "this is one of the most flagrant examples of a frivolous claim that I can ever imagine."
Insofar as the Tax Court judge based his determination on section b(2), McKeown-Brand, supra, would bar the relief granted. We will, however, discuss the alternative provision, section b(1), which provides for relief when a party acts in bad faith when commencing, using or continuing an action. However, it is "clear that the Legislature intended that false allegations of fact would not justify the award of counsel fees, unless they are made in bad faith, [solely] `for the purpose of harassment, delay or malicious injury.'" McKeown-Brand v. Trump Castle Hotel & Casino, supra, 132 N.J. at 561, 626 A.2d 425 (quoting N.J.S.A. 2A:15-59.1b(1). A party seeking relief under this section must show the ill-intent of the non-prevailing party. The Tax Court's finding that "continuing the litigation had the effect of harassing the defendant by causing it to expend its money and the time and effort of its employees and officials to deal with this litigation," Throckmorton, supra, 12 N.J. Tax at 430, misses the mark. The effect of a party's actions is not the focus of the Act. The Tax *21 Court never found that this was plaintiff's "sole purpose" in filing and maintaining the action as the Act requires.
The Tax Court did not find that the complaint was commenced in bad faith. The court noted that such a finding would have broad ramifications on all future Tax Court litigants:
Such a determination in the Tax Court could have a chilling effect on both taxpayers and municipalities who seek relief in the Tax Court either by way of a direct appeal or by way of the filing of a complaint seeking review of a county board judgment in local property tax matters.
There are short time constraints for the commencing of an action in the Tax Court. Statutory deadlines are strictly enforced and late filings deprive the court of jurisdiction and deny a party its day in court.

[Id. at 429.]
After acknowledging the propriety of plaintiff's filing the complaint, the decision turned to plaintiff's continuation of the appeal.
We have noted that "continued prosecution of a claim or defense may, based on facts coming to be known to the party after the filing of the initial pleading, be sanctionable as baseless or frivolous even if the initial assertion of the claim or defense was not." Iannone, supra, 245 N.J. Super. at 31, 583 A.2d 770. However, we also stated that if the asserted legal position were not initially sanctionable, "a party would be entitled to a reasonable opportunity to reappraise that position in response to facts and circumstances which later become known." Ibid.
The Tax Court concluded that its "finding that the complaint was frivolous is not based on the provision of the statute which says that a complaint is frivolous if it `was commenced ... in bad faith.'" Throckmorton, supra, 12 N.J. Tax at 429. Instead, the court focused on the effect of continuing the litigation, and concluded that plaintiff's actions "had the effect of harassing defendant by causing it to expend its money ... to deal with the litigation." Id. at 430.
There is no objective or subjective evidence in the record to support the conclusion that plaintiff continued the action in "bad faith, solely for the purpose of harassment, delay or malicious injury." As in McKeown-Brand v. Trump Castle Hotel & Casino, supra, 132 N.J. at 563, 626 A.2d 425, the evidence indicates that *22 plaintiff brought and continued the action because he honestly perceived, even though ill-founded, that a reduction in the assessment was warranted.[3] The Tax Court relied on the "fact" that plaintiff failed to attempt to obtain an appraisal from Goldberg. Even if we were to accept this "fact" as true, which the record does not support, negligence on plaintiff's part does not constitute evidence of bad faith under the (b)(1) prong. The court in Chernin v. Mardan Corp., 244 N.J. Super. 379, 582 A.2d 847 (Ch.Div. 1990), found that even though plaintiff was an attorney and failed to address the issue for approximately two months, the delay did not constitute bad faith for the purpose of harassment or delay. Id. at 384, 582 A.2d 847. The court added: "This language requires something more than negligence." Ibid. Even if plaintiff or his attorney was not diligent in obtaining the appraisal from Goldberg, this inaction does not satisfy the (b)(1) prong.
The Tax Court placed great emphasis on the statement of plaintiff's counsel at the initial hearing that after he received defendant's February 28, 1990, letter,
We just called our appraiser, Goldberg, and he inspected the property and sought information. He told us that he could show us a value of less than the assessment but not lower than the common level stated in that letter.

Throckmorton, supra, 12 N.J. Tax at 423.
The Tax Court found this comment as evidence that plaintiff was aware early in 1990 that his claim was without merit. The judge misinterpreted the statement to be that Goldberg immediately responded. This comment was clearly clarified when counsel stated on the next page of the transcript:

*23 We received the defendant's appraisal report which we passed on to our appraiser. After he read that, he was convinced that a reduction would not be warranted...
Whereupon, the court asked counsel:
... Can you tell me why it is that you did not proceed in accordance with the case manage  the first case management notice and then the second postponed case management schedule to get an appraiser  an appraisal  pardon me?
Plaintiff's counsel replied:
Well, we passed the information on to our appraiser. He  I can't tell you exactly why the appraisal was not done on time in accordance with the case management notice; but once we received the defendant's appraiser  appraisal, he read that thoroughly and then issued his opinion that the reduction was not warranted....
The judge found that "plaintiff did not withdraw his complaint; plaintiff permitted the municipality to continue with its defense; and plaintiff continued his claim for relief in bad faith with the full knowledge that his complaint was without any basis for success in lowering the assessment...." Ibid.
The judge's chronology of the events was erroneous. Goldberg's comments concerning the value and the chapter 123 common level were made after he had received the report of the Township's appraiser in late August 1990, not after plaintiff received the Township's letter in late February 1990. The Tax Court gave much consideration to the Township's letter of February 28, 1990, which sought to "settle" the appeal by increasing the assessment by 75%. The judge stated, "Plaintiff's counsel never responded to the letter." Id. at 422. The transcript contradicts this finding. In addition, conversations with Goldberg began as early as March 1990, and the record contains numerous specific references to plaintiff's efforts to obtain an appraisal from Goldberg.
When plaintiff was informed by Goldberg that no reduction was warranted, he promptly withdrew his complaint. To require a taxpayer to accept assertions by a municipality concerning the value of his/her property and either settle for an increased assessment or withdraw the complaint or face the imposition of attorney's fees, as the Township did, would place municipalities in such an advantageous position as to chill legitimate advocacy. As we have stated:

*24 [W]hile baseless litigation must be deterred, nevertheless the counsel-fee sanction mode of deterrence should not be permitted to generate even more litigation, the right of access to the courts should not be unduly infringed upon, honest and creative advocacy should not be discouraged, and the salutary policy of litigants bearing, in the main, their own litigation costs, should not be abandoned. Hence the counsel-fee sanction must not be made available for every litigation infraction.
[Iannone, supra, 245 N.J. Super. at 28, 583 A.2d 770.]
The Township did not satisfy either the (b)(1) or (b)(2) prongs of the Act.
Furthermore, there is a serious question whether the Township is a prevailing party under the Act. The judge found that defendant was the prevailing party because plaintiff's withdrawal of the complaint was tantamount to a dismissal and defendant obtained the relief that it sought in its answer. Throckmorton, supra, 12 N.J. Tax at 427. The judge apparently overlooked the fact that the Township was seeking to increase the assessment by $870,000. However, the prevailing party need not be the "winner" of a lawsuit. Chernin, supra, 244 N.J. Super. at 383, 582 A.2d 847. Even where a settlement is reached, the facts can be interpreted to demonstrate that one party has "prevailed" for purposes of the Act. Fagas v. Scott, 251 N.J. Super. 169, 192, 597 A.2d 571 (Law Div. 1991). Once the Township sent out its letter of February 28, 1990, it was seeking an increase in the assessment of $870,000. It was not until August 20, 1990, when the Township submitted its expert's appraisal that it acknowledged that it had overstated the market value by $448,000. When plaintiff withdrew his complaint, the Township obtained no increase in the assessment because of its failure to file a timely counterclaim. Although plaintiff did not obtain his requested relief, he may well have been the ultimate prevailing party.
Finally, plaintiff points to R. 8:3-9, which permits a unilateral withdrawal of a Tax Court complaint whether or not a responsive pleading has been filed for its contention that the Act does not apply to Tax Court proceedings. This rule departs from the Superior Court practice in this regard. Pressler, Current New Jersey Court Rules, comment on R. 8:3-9 (1993). However, *25 there is nothing either in the rule or the Act to indicate that just because a litigant is permitted unilaterally to withdraw his complaint, he is, therefore, exempt from a finding that his action was frivolous. The rules in Part I of the court rules are specifically applicable to the Tax Court as well as other courts. R. 1:1-1. The rules in Part IV are likewise specifically applicable to the Tax Court except as otherwise provided in Part VIII (rules governing the Tax Court). R. 4:1. Given that the Act was adopted nine years after the Tax Court rules, we conclude that had the Legislature wanted to exempt Tax Court actions, it would have specifically done so.
Plaintiff's contention that the Act is unconstitutional because it usurps the Supreme Court's exclusive jurisdiction to discipline attorneys has now been rejected by the Supreme Court. McKeown-Brand v. Trump Castle Hotel & Casino, supra.
Reversed and remanded to vacate the award of attorney's fees and costs.
NOTES
[1] Goldberg ultimately sent a letter to plaintiff dated September 14, 1990, in which he stated that the fair market value of the property was $1,762,000, and that based on this appraisal he recommended that plaintiff withdraw his tax appeal. Goldberg stated that "The ratio of the assessment to true value for the subject property is therefore 80.14%. The average ratio for Egg Harbor Township for tax year 1989 was 83.45%, with a lower limit of 70.93% and an upper limit of 95.97%. The building's assessment then falls within the permitted corridor and no reduction is warranted." Using the "average ratio" of 83%, as indicated by the Township, this would result in an assessment of $1,462,000  which would be only $50,000 more than the assessment. However, using a ratio of 80.14% would make Goldberg's appraisal almost the same as the assessment.
[2] In McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 626 A.2d 425 (1993), this subsection b(2) was found to encroach upon the Supreme Court's judicial power to discipline attorneys. Id. at 558, 626 A.2d 425.
[3] At the hearing of the motion to reconsider, plaintiff's attorney stated that plaintiff has brought many Tax Court appeals through Brach, Eichler. Plaintiff received a reduction in all appeals except one. He informed Brach, Eichler of the substantial vacancies at the property, and the difficulty in finding new tenants because of the recent fire in the building. His income and expense documents showed that his complaint might have had validity. We need not determine if such evidence is properly admissible when it was not presented in an affidavit or certification. However, this evidence clearly would be a complete defense to the Township's application for fees. McKeown-Brand, supra, 132 N.J. at 558, 626 A.2d 425.