745 A.2d 568

MORTON GILBERT, PLAINTIFF–RESPONDENT, v. ELECTRO–STEAM GENERATOR CORP., DEFENDANT–APPELLANT, AND JEWISH COMMUNITY CENTER OF GREATER MONMOUTH COUNTY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted January 27, 2000—Decided February 10, 2000.

232

Before Judges KING, PAUL G. LEVY and CARCHMAN.

*Avolio & Hanlon,* for appellant (*Robert P. Avolio,* on the brief).

*Hanna & Anderson,* for respondent (*Robert M. Anderson,* on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

Defendant, Electro–Steam Corporation (ESC) appeals from the denial of its motion for an award of counsel fees based on a claim of frivolous litigation. We conclude the motion judge did not abuse his discretion in denying fees and affirm for the reasons expressed by the judge.

The underlying cause of action arose from plaintiff's claims for damages arising from injuries sustained from a slip and fall in a steam room located at the premises of the co-defendant, Jewish Community Center (JCC). As plaintiff was leaving the steam room, he walked to the edge of the bottom row of seats. When he extended his left foot towards the floor, his right foot slipped on the surface of the step, and he fell, striking his extended left foot against the steam valve located on the vertical riser of the step about five inches from the floor. His left foot was impaled on the valve and the bottom of that foot was cut and bleeding heavily. Fortunately a medical trauma surgeon was among those in the steam room, and he aided plaintiff.

Plaintiff is an engineer, having graduated from Yale University. Approximately one year after the accident, plaintiff perused a buyer's guide known as the Thomas Register "to find out who made steam baths to find out where steam valves were to be located." He wrote to ESC and asked for "literature concerning the necessary equipment and details for installation" of a steam bath. Upon receipt of ESC's catalogue, he perceived that a particular diffuser head was similar to that at the JCC. He purchased a diffuser head and upon comparison, he believed it was "clearly identical" to the part of the mechanism on which he hurt himself. It is reasonable to conclude that based on the literature and inspection of the part, plaintiff thought the diffuser head that caused his injury was manufactured by ESC.

Plaintiff's complaint alleged ESC was liable on negligence and products liability theories, but the discovery process revealed no evidence of ESC's involvement was. The JCC had no documents relating to its use of ESC equipment. Eventually, JCC notified ESC that an identification plate attached to the steam generator installed for its steam room said "Mr. Steam, Model CU1250, Serial # 10889088." On March 4, 1998, counsel for ESC advised plaintiff that the Mr. Steam generator was involved, and he requested a voluntary stipulation of dismissal for ESC. Two months later, ESC made another demand for a stipulation of

dismissal and warned that sanctions would be sought if ESC had to file a formal motion. A proposed form of certification by ESC's president was sent to plaintiff, and it plainly stated that ESC did not manufacture the Mr. Steam product and that ESC had no knowledge of supplying any parts to the JCC. Plaintiff did not respond to these requests.

Consequently, ESC filed a motion for summary judgment, which plaintiff did not oppose. The supporting documents are not part of the appellate record, but the motion judge specified in the order granting summary judgment that there was "no ques[tion] of fact that def[endant] did not manufacture the product in question."

Two months later ESC moved for "attorney fees and costs resulting from frivolous litigation." Judge Coogan considered the motion, and after reciting the facts essentially as stated above, recited the movant's argument that "plaintiff's complaint against [ESC] was commenced and continued in bad faith and that plaintiff knew or should have known that the complaint had no reasonable basis." Defendant sought a counsel fee award of $16,000. Plaintiff countered by contending it had made "a reasonable mistake based on the similarity or identicalness of the two valves." The judge denied the motion, finding plaintiff filed the complaint in good faith because plaintiff's investigation, while misguided, was made in good faith.

ESC moved for reconsideration, but the motion was denied for two reasons: first, because ESC did not raise any new issues or facts to require reconsideration, *Cummings v. Bahr*, 295 *N.J.Super.* 374, 384, 685 *A.*2d 60 (App.Div.1996), and second, because the maintenance of the complaint after ESC called for its dismissal was not frivolous under *N.J.S.A.* 2A:15–59.1b.

On appeal, ESC contends the statute is applicable because "early in the litigation of this case, it became apparent that the inclusion of Electro–Steam as a defendant in this action was unsubstantiated and based on guesswork." That assertion is not borne out by the record, as the first definite notice to plaintiff that

ESC did not manufacture the steam generator installed at the JCC was in May 1998. It was at that time that ESC first demanded a dismissal, and the demand was repeated two months later. The last demand included a proposed certification from ESC's president detailing the complete lack of connection between ESC and the JCC steam room. When plaintiff did not reply immediately, ESC filed its motion for summary judgment twelve days later. Apparently realizing it had no basis to contradict ESC, plaintiff did not oppose the motion and it was granted. Two months later ESC sought sanctions under the frivolous litigation statute.

To show an action frivolous, the moving party must prove, on the basis of the record, that:

(1) The complaint ... was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or

(2) The nonprevailing party knew, or should have known, that the complaint ... was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
[*N.J.S.A.* 2A:15–59.1b.]

Judge Coogan held that the statute applies "where the continuation of the case becomes so obstinate" but that this case had not reached that level. Part of the ruling related to the claim against the co-defendant JCC, and part of it clearly related to the short time period between the revelation of the complete lack of connection between ESC and the JCC and the filing of the motions for summary judgment and for sanctions under *N.J.S.A.* 2A:15–59.1b. We cannot conclude that Judge Coogan's decision was an abuse of judicial discretion. Failure to reply to importuning for a dismissal does not *a fortiori* correspond to continuance of the litigation in bad faith.

This case is different from our recent decision in *DeBrango v. Summit Bancorp.*, 328 *N.J.Super.* 219, 745 *A.*2d 561 (App.Div. 2000), where we awarded counsel fees and costs for continuing frivolous litigation. In the present case, while cessation of the action against ESC was warranted, plaintiff took no affirmative action to advance the litigation. In *DeBrango*, not only did the

plaintiffs reject an offer of judgment and apply for trial *de novo* after an arbitrator found no cause of action, but plaintiffs also opposed defendant's summary judgment motion. Here, we conclude that the trial judge did not abuse his discretion in determining there was an absence of bad faith. Accordingly, we affirm the denial of sanctions under the statute.

Affirmed.