745 A.2d 561 (2000)
328 N.J. Super. 219
John DEBRANGO and Catherine Debrango, Plaintiffs-Appellants/Cross-Respondents,
v.
SUMMIT BANCORP, Defendant-Respondent/Cross-Appellant, and
Alejandro G. Alonso, a/k/a Alex G. Alonso, William Mendel, Provident Mutual Life & Annuity Company of America, Bank of New York, Stanley Rolnick, John Hancock Distributors, Inc., John Hancock Mutual Life Insurance Co., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 2000.
Decided February 10, 2000.
*562 Victor Herlinsky, Jr., Hackensack, for plaintiffs-appellants/cross-respondents (Mr. Herlinsky, attorney; Jonathan J. Mincis, Teaneck, on the brief).
Gregg S. Sodini, Parsippany, for defendant-respondent/cross-appellant (Harris, Beach & Wilcox, Hackensack, attorneys; Mr. Sodini and Mary Fran Farley, on the brief).
Before Judges KING and LEFELT.
*563 The opinion of the court was delivered by LEFELT, J.S.C. (temporarily assigned).
Plaintiffs John and Catherine DeBrango ("plaintiffs" or "DeBrangos") were defrauded by their son-in-law Alejandro Alonso, who claimed to be acting as their financial advisor. Seeking to recover their misappropriated funds, plaintiffs sued Alonso, Summit Bank, the Bank of New York and several other entities, based on theories of fraud, wrongful misappropriation, unjust enrichment, and respondeat superior. Plaintiffs appeal from the trial judge's award of $19,590.86 in counsel fees and litigation costs, pursuant to the frivolous litigation statute, N.J.S.A. 2A:15-59.1, entered against plaintiffs and their counsel in favor of Summit Bank. Summit Bank cross-appealed seeking the full amount of its attorneys' fees and costs. We affirm summary judgment in favor of Summit Bank, but reverse, and reduce the amount of counsel fees and costs awarded.
In July 1991, the DeBrangos loaned Alonso approximately $90,000 to assist Alonso with start-up costs associated with his business, AGM Financial Planning Inc. Sometime in 1992, plaintiffs asked Alonso what happened to their money. Alonso represented that he had invested the funds in a guaranteed life annuity with Guardian Insurance Company.
Alonso began employment on August 30, 1993, as a financial representative with United Jersey Bank (currently Summit Bank) and remained in the bank's employ until October 1994. In 1994, while Alonso was still employed by United Jersey Bank, Mrs. DeBrango again inquired about the loan. This time, Alonso stated that although their money had earned interest, he advised transferring the funds to a sounder investment with his present employer, United Jersey Bank. On May 23, 1994, the DeBrangos received a letter, purportedly from "Daniel P. Louis, Vice President, United Jersey Bank," thanking them for "purchasing a Provident Mutual Annuity from United Jersey Bank." Based upon this letter, the DeBrangos also thought that their $90,000 investment had grown to almost $114,000.
Sometime thereafter, when it became clear that Alonso had stolen the DeBrangos' money, plaintiffs contacted the prosecutor. Alonso admitted guilt, and in 1996, he was permitted to enter the pre-trial intervention program. As part of that program, Alonso agreed to pay restitution of approximately $500 to $1,000 per-month over a three-year period to the DeBrangos.
On September 2, 1997, plaintiffs filed the seventeen count civil complaint that led to this appeal. On October 23, 1997, in lieu of answer, Summit Bank filed a motion for summary judgment. On December 5, 1997, the motion judge indicated that "there are several issues of fact here that must be left to the jury with regard[ ] to whether there was a fraudulent act and what was the scope of Alonso's employment." The judge denied the motion without prejudice because he did not "know which way it's going to go. [He wanted] to see how all the discovery goes." Summit Bank then answered plaintiffs' complaint, and discovery between and among the parties began.
On March 11, 1998, the parties took Alonso's deposition. At that deposition, Alonso testified that the fraudulent transactions with plaintiffs occurred before his employment with United Jersey Bank. Besides using United Jersey Bank's Provident Mutual Annuity application and bank letter head, Alonso also indicated that he had acted entirely on his own. He confessed to replacing the bank's vice president's signature on the May 23, 1994 letter with the fictitious name "Daniel P. Louis." Alonso further testified that no benefit accrued to United Jersey Bank or Summit Bank from any of his fraudulent transactions.
Shortly after Alonso's deposition, on March 17, 1998, pursuant to R. 1:4-8, Summit *564 Bank advised plaintiffs' counsel that the complaint against Summit Bank should be dismissed. Plaintiffs did not respond. On May 29, 1998, Summit's counsel further informed plaintiffs' counsel that "the funds in question ... were depleted prior to Mr. Alonso's employment at Summit" and "[r]ecords obtained from Mr. Alonso and Hudson United Bank, where the funds were deposited, confirm this fact."
On June 1, 1998, an arbitrator found that there was "no cause" for plaintiffs to proceed against Summit Bank. Plaintiffs rejected the arbitration and applied for trial de novo. On July 10, 1998, Summit, pursuant to R. 4:58-1, forwarded an offer of judgment to plaintiffs for five-cents. Plaintiffs, again, did not release Summit Bank from the action. Subsequently, plaintiffs either settled with or voluntarily dismissed their action against all other defendants.
On July 23, 1998, Summit Bank refiled its summary judgment motion and also requested litigation costs and attorneys' fees. On September 11, 1998, the trial court granted Summit Bank's motion for summary judgment and dismissed plaintiffs' complaint against it. The judge advised Summit Bank to refile its application for fees and costs so that the matter could be fully briefed and orally argued. R. 4:42-9(a)(8), -9(b) and -9(c).
On October 23, 1998, after briefing and oral argument, the trial court granted Summit Bank's application for litigation fees and costs, found the litigation against Summit Bank frivolous, and awarded the bank a $19,590.86 judgment to be paid by plaintiffs and their counsel. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 626 A.2d 425 (1993); N.J.S.A. 2A:15-59.1; R. 1:4-8.
Summit Bank had claimed that the total amount of services rendered and costs incurred by the bank from the inception of this matter through July 31, 1998, was $18,340.86. In its motion, Summit Bank's counsel estimated that August 1998 fees and costs would total $1,250. The motion judge, therefore, added the bank's August 1998 estimate to the total fees incurred, and derived the $19,590.86 judgment. On December 4, 1998, the trial court denied plaintiffs' motion for reconsideration of the October 23, 1998 order.
Thereafter, plaintiffs appealed the $19,590.86 award of attorney fees and costs, and Summit Bank cross-appealed seeking all of its fees and costs. Summit Bank claims that it incurred additional fees and costs totaling $4,017.77 ($2,767.77 plus the $1,250 estimate) from August 1, 1998, through September 30, 1998. Accordingly, Summit Bank seeks a judgment totaling $22,358.63, under either the trial de novo rule, R. 4:21A-6; offer of judgment rule, R. 4:58-1; or frivolous litigation statute, N.J.S.A. 2A:15-59.1. We consider each of these claims in turn.

I. Trial de novo rule
On June 1, 1998, an arbitrator concluded that plaintiffs had no cause of action against Summit Bank. Nevertheless, plaintiffs later filed for trial de novo in accordance with R. 4:21A-6(c). Thus, the bank was entitled to attorneys' fees because the motion judge subsequently granted summary judgment to Summit Bank. However, attorneys' fees under this rule are limited to $750, R. 4:21A-6(c)(3), and if fees are awarded under any other theory, the bank would not be entitled to double recovery.

II. Offer of judgment rule
Plaintiffs' complaint sought joint and several liability against several defendants besides Summit Bank, including: Alonso; Provident Mutual Life & Annuity Company of America; the Bank of New York; and John Hancock Mutual Life Insurance Company. Summit Bank utilized the offer of judgment rule, R. 4:58-1, by offering plaintiffs a five-cent judgment. Under this procedure, because plaintiffs did not accept the offer, and the summary judgment awarded the bank was less favorable *565 to plaintiffs than the five-cent judgment, it would appear that Summit Bank would be entitled to "costs of suit" and "a reasonable attorneys' fee, for such subsequent services as [were] compelled by the non-acceptance...." R. 4:58-3.
However, in Schettino v. Roizman Dev., Inc., 158 N.J. 476, 478, 730 A.2d 797 (1999), the Supreme Court held that plaintiffs who asserted that "multiple defendants [were] jointly and severally liable [were] not subject to the financial consequences of Rule 4:58-3 for rejecting an offer by a single defendant to settle only the claim against it." The Court explained that imposition of a financial penalty on plaintiffs in this situation would undermine the purpose of joint and several liability by shifting to plaintiffs the burden of determining a single defendant's share of liability when evaluating the fairness of the settlement offer. Id. at 484, 730 A.2d 797.
It is only an offer to settle the entire case on behalf of all defendants that triggers a potential claim for counsel fees under R. 4:58-1. Ibid. While an individual defendant may make a settlement offer, "that defendant is not entitled to counsel fees under Rule 4:58 if the offer is rejected." Ibid. Accordingly, Summit Bank is not entitled to any recovery under the offer of judgment rule.

III. Frivolous litigation statute and rule
The most significant argument advanced by the bank to justify its counsel fee award was that plaintiffs' litigation was frivolous. Preliminarily, we agree with the motion judge that plaintiffs' action against Summit Bank was frivolous and, therefore, that Summit Bank, as the prevailing party, may be awarded litigation costs and attorney fees. N.J.S.A. 2A:15-59.1a(1). But, we do not agree that the action was frivolous when the complaint was filed.
Under N.J.S.A. 2A:15-59.1b, to find a complaint frivolous, the judge must conclude that either:
(1) The complaint ... was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or (2) The non-prevailing party knew, or should have known, that the complaint ... was without any reasonable basis in law or equity and could not be supported by a good faith argument for the extension, modification or reversal of existing law.
We must interpret this statute restrictively to ensure that our citizens are not dissuaded from accessing the courts. McKeown-Brand, supra, 132 N.J. at 561-62, 626 A.2d 425. Of course, we must also deter baseless litigation, but we must do so without discouraging honest, creative advocacy. Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 85, 628 A.2d 793 (App.Div. 1993). We must also keep in mind our significant policy that litigants should usually bear their own litigation costs. Iannone v. McHale, 245 N.J.Super. 17, 28, 583 A.2d 770 (App.Div. 1990).
With these general principles in mind, we review the record in light of the statute to determine whether plaintiffs actions were objectively reasonable under the circumstances. Ellison, supra, 266 N.J.Super. at 85, 628 A.2d 793. An attorneys' fees sanction pursuant to R. 1:4-8 "is not warranted where the plaintiff has a reasonable good faith belief in the merit of [its] action." J.W. v. L.R., 325 N.J.Super. 543, 548, 740 A.2d 146 (App.Div.1999); K.D. v. Bozarth, 313 N.J.Super. 561, 574-75, 713 A.2d 546 (App.Div.), certif. denied, 156 N.J. 425, 719 A.2d 1023 (1998).
We have concluded that when plaintiffs began this litigation, plaintiffs had reason to believe that the fraud Alonso perpetrated against them also involved Summit Bank's predecessor, United Jersey Bank, at least to some degree. Plaintiffs reasonably thought that Alonso invested their money in an annuity, and based on the application and letter they received from "Daniel P. Louis," they believed the bank had been involved in some way. There was, therefore, sufficient good *566 faith basis to commence litigation against Summit Bank. Plaintiffs were also entitled to rely on the initial denial of summary judgment as an indication that they might be able to prevail against the bank, depending on what discovery disclosed.
After plaintiffs received the May 29, 1998 letter stating that Alonso's bank records indicated that the funds were depleted prior to his employment with Summit, however, plaintiffs' complaint was continued without reasonable basis in law or equity, N.J.S.A. 2A:15-59.1b(2). By this time, plaintiffs knew that Summit Bank had not derived any benefit from Alonso's fraudulent activities, and there was no evidence that United Jersey Bank, either before or during Alonso's employment, would have had any reason to suspect that he was defrauding plaintiffs. While Alonso's deposition strongly indicated that the funds were spent before his employment with Summit, plaintiffs, given the previous fraud perpetrated on them by Alonso, acted reasonably by being suspicious of this testimony. However, once plaintiffs learned that bank records confirmed Alonso's deposition testimony, the litigation became frivolous.
Indeed, after receipt of this letter and review of his bank records, plaintiffs knew that their money had been spent before Alonso began employment with the bank. Plaintiffs also knew that Daniel P. Louis's letter was fabricated. Furthermore, the letter head and annuity application that Alonso used to conceal his fraudulent activities were not the kind of materials that should have been safeguarded in some way, and were probably available to most bank employees.
Accordingly, after plaintiffs received the May 29, 1998 letter, they lacked a "good faith" basis to proceed against the bank, N.J.S.A. 2A:15-59.1b(2), and the litigation became frivolous. Plaintiffs' attorney was obligated at that time to withdraw the complaint against Summit Bank because its contentions lacked sufficient evidentiary support. R. 1:4-8(a)(3); Throckmorton v. Township of Egg Harbor, 267 N.J.Super. 14, 20, 23, 630 A.2d 794 (App.Div.1993). Specifically, R. 1:4-8(a)(3) provides that complaints "will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support[.]"
The present case is unlike our decision in Gilbert v. Electro-Steam Generator Corp., 328 N.J.Super. 231, 745 A.2d 568 (App.Div.2000), where we declined to award attorneys' fees under N.J.S.A. 2A:15-59.1. In Gilbert, plaintiff failed to respond to defendant's requests for voluntary dismissal and then did not oppose defendant's summary judgment motion. Here, plaintiffs took affirmative action to advance litigation that they knew or should have known to be frivolous. Not only did plaintiffs reject Summit Bank's July 1998 offer of judgment, but prior to that, in June 1998, plaintiffs applied for trial de novo, despite an arbitrator's determination that plaintiffs had no cause of action against Summit Bank. Moreover, plaintiffs opposed the bank's summary judgment motion. Accordingly, this case warrants an award of fees and costs against plaintiffs for continuing frivolous litigation in bad faith.
Summit Bank contends, however, that it is entitled to recover from plaintiffs all fees and costs it spent in defense of this frivolous litigation. To some degree the motion judge seemed to operate under a similar misconception. However, only reasonable attorney fees may be awarded under the statute or rule. While Summit Bank argues that it is entitled to all its costs and fees, the statute provides that the prevailing party may be awarded "all reasonable litigation costs and reasonable attorney fees." N.J.S.A. 2A:15-59.1a(1) (emphasis added).
The Legislature would not have required a detailed affidavit supporting the fee and cost application if all fees and costs were recoverable in frivolous litigation.
*567 As required by the Legislature, the affidavit must include:
The nature of the services rendered, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent to the evaluation of the services rendered, the amount of the allowance applied for, an itemization of the disbursements for which reimbursement is sought, and any other factors relevant in evaluating fees and costs[.]

[N.J.S.A. 2A:15-59.1c(1).]
Furthermore, the statute requires the affidavit to specify "[h]ow much has been paid to the attorney and what provision, if any, has been made for the payment of these fees in the future." Id. at c(2). It is obvious that the Legislature intended judicial discretion to be exercised in determining an award of fees and costs for frivolous litigation.
Moreover, under R. 1:4-8(d), sanctions for frivolous litigation may include "reasonable attorneys' fees and other expenses incurred as a direct result of the violation, or both." Thus, it is apparent that neither statute nor rule provides for an award of all fees, no matter how unreasonable.
In addition, the bank is not entitled to recover any fees and costs for defense expenses incurred from the beginning of the litigation up to the May 29, 1998 letter. If costs and fees were awarded for activity preceding the time when litigation became frivolous, we would discourage filing of complaints that were reasonably based, but required some discovery for proper development. In our opinion, such a result would be unfortunate, and would unduly infringe upon our citizens right to access the courts. McKeown-Brand, supra, 132 N.J. at 561-62, 626 A.2d 425.
According to Summit Bank's attorneys, they billed the bank $22,358.63 in costs and attorneys' fees for its defense from the beginning of this litigation into October 1998, when the second summary judgment motion was granted and the attorneys' fees and costs judgment was awarded Summit Bank. Of those funds, for the reasons explained above, all costs and fees charged for work up to May 29, 1998 must be paid by the bank. Our review of the billing records leads us to conclude that $13,761.73 can be attributed to litigation costs incurred before the matter became frivolous. Accordingly, $8,596.90 of Summit's expenses remain in dispute.

IV. Conclusion
To avoid any additional costs that would be incurred if we were to remand this matter to the motion judge, we exercise our original jurisdiction to determine what reasonable fees and costs can be awarded to the bank. R. 2:10-5. In assessing fees and costs, we consider the factors mentioned in N.J.S.A. 2A:15-59.1c(1)and (2), and those noted in RPC 1.5 to determine "the reasonableness of a fee."
After considering all pertinent factors, we have concluded that after the May 29, 1998 letter, the bank incurred reasonable defense costs of $1,253.90 and reasonable attorney fees of $6,022.50, totaling $7,276.40. Because reasonable fees and costs exceed $750, the bank is not entitled to any recovery under the trial de novo rule. R. 4:21A-6(c)(3). Finally, we note that while fees and costs can be assessed for appeals of frivolous actions, Khoudary v. Salem County Bd. of Social Services, 281 N.J.Super. 571, 576, 658 A.2d 1317 (App.Div.1995), plaintiffs' appeal had merit, and, therefore, no additional costs or fees will be assessed against plaintiffs.
Accordingly, we affirm summary judgment to the extent that we have concluded that plaintiffs' litigation against Summit Bank became frivolous. For the reasons explained, however, we reverse and reduce the amount of the judgment entered to $7,276.40.
Affirmed in part, reversed in part.