NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1210-15T3

JOY MCDERMOTT-GUBER AND
WILLIAM GUBER,

 Plaintiffs-Appellants/
 Cross-Respondents,

v.

ESTATE OF MABEL A. MCDERMOTT
AND BART ALAN MCDERMOTT,

 Defendants-Respondents/
 Cross-Appellants.

BART J. MCDERMOTT, INC.,

 Plaintiff,

v.

JOY MCDERMOTT-GUBER, a/k/a JOY
MCDERMOTT,

 Defendant.

 Argued April 26, 2017 – Decided May 19, 2017

 Before Judges Fuentes, Carroll and Farrington.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Morris County,
 Docket No. C-58-12 and Law Division, Docket
 No. L-2247-12.
 Gary Wm. Moylen argued the cause
 appellants/cross-respondents.

 Walter J. Fleischer, Jr. argued the cause for
 respondents/cross-appellants (Drinker Biddle
 & Reath LLP, attorneys; Mr. Fleischer and
 Jennifer G. Chawla, on the briefs).

PER CURIAM

 This appeal involves a dispute over ownership of a one-half

interest in residential real property located at 49 Arlington

Avenue, Parsippany (the property). Plaintiffs Joy McDermott-Guber

(Joy)1 and her husband William Guber appeal from a series of

Chancery Division orders that: declared Joy's brother, defendant

Bart Alan McDermott (Alan), owner of the disputed one-half property

interest; denied plaintiffs' application for partition credits

prior to the time Alan acquired title and granted Alan credit for

the rental value of the property; and awarded Alan and defendant

Estate of Mabel A. McDermott (Mabel) $20,000 in frivolous

litigation sanctions. Defendants have filed a "protective" cross-

appeal with regard to the partition credits granted by the trial

court. They also challenge the sanctions award as inadequate.

For the reasons that follow, we reverse the award of sanctions,

and affirm in all other respects.

1
 Because this appeal involves several members of the McDermott
family, we refer to those individuals by their first names for
clarity and ease of reference. We intend no disrespect by this
informality.

 2 A-1210-15T3
 I.

 The property was originally a vacant lot owned by Mabel and

her husband Bartholomew McDermott (Bartholomew), who are the

parents of Joy and Alan. On December 30, 1986, Bartholomew and

Mabel deeded a one-half interest in the property to Joy (the first

deed). The deed was recorded the same day in the Office of the

Morris County Clerk. This deed is not disputed, and the parties

agree that Joy owns this one-half interest.

 In 1992, plaintiffs undertook steps to construct a single-

family ranch home on the property that they intended to occupy.

Bartholomew died on September 1, 1992, leaving Mabel as the sole

owner of the remaining one-half interest in the property.

According to Joy, Mabel thereafter asked her to change the building

plans to include construction of a second floor where Mabel could

reside. In return, Joy claims Mabel agreed to convey her remaining

half-interest in the property to Joy. Relying on Mabel's promise,

plaintiffs constructed the two-story house which was completed in

April 1996. Plaintiffs and Mabel moved into the home thereafter

without incident.

 Mother, daughter, and son-in-law continued to reside there

until 2011, when Mabel obtained a temporary restraining order

against Joy under the Prevention of Domestic Violence Act, N.J.S.A.

2C:25-17 to -35. Mabel then moved in with Alan before ultimately

 3 A-1210-15T3
relocating to the Franciscan Oaks assisted living facility in

Denville. Plaintiffs continue to reside in the property.

 On June 11, 2012, Joy filed a quiet title action against Alan

and Mabel in the Chancery Division, General Equity Part in Morris

County, seeking a declaration that she is the sole owner of the

entire property. Joy alleged that Mabel conveyed the remaining

one-half interest in the property to her by an unrecorded deed

dated August 18, 1993 (the second deed). The complaint also sought

to invalidate an October 24, 2011 deed that was recorded in the

Morris County Clerk's Office on December 14, 2011 (the fourth

deed), pursuant to which Mabel conveyed the remaining one-half

interest to Alan. Alan filed a contesting answer and counterclaim

in which he sought a declaration that he owned an undivided one-

half interest in the property and requested that the property be

partitioned. Mabel filed a separate answer and counterclaim

seeking similar relief.

 Pretrial discovery revealed that, around 2001, Henry Van

Houten, Esq. prepared the second deed to Joy at Mabel's request.

The deed acknowledged, falsely, that Mabel executed it on August

18, 1993. This second deed was printed on an All-State legal form

bearing a 1996 copyright date. Mabel later noticed that, although

the deed bore a 1993 date, it was printed on a 1996 form. Since

this discrepancy made the backdating of the second deed apparent,

 4 A-1210-15T3
Mabel attested in her answers to interrogatories that she then

contacted Van Houten to prepare a new deed conveying the remaining

half-interest to Joy. Van Houten did so, on a form bearing a 1982

copyright date (the third deed). This third deed was also dated

August 18, 1993, and falsely acknowledged that Mabel executed it

on December 27, 1993. Like the second deed, the third deed was

not recorded, nor was it given to Joy. Rather, Mabel gave the

third deed to Alan to retain. Van Houten kept the second deed in

his file, and Joy purportedly became aware of its existence during

a visit to Van Houten's office in 2012.2

 In her interrogatory answers, Mabel asserted that the second

deed was never recorded or delivered to Joy. She explained, "I

would [have never] given [Joy] my half[-]interest in the [p]roperty

while I am alive, because I was afraid that she would throw me out

of the [p]roperty, as she threatened to do on a number of

occasions." Mabel elaborated: "[Joy] misstates the purpose of the

[s]econd [d]eed in . . . the [c]omplaint. My intent was not to

convey my half[-]interest in the [p]roperty to her. Instead, the

intent of that deed was to avoid inheritance taxes on the

2
 Defendants dispute this account and maintain that Joy removed
the original second deed from Mabel's apartment after locking
Mabel out around the time Mabel obtained the restraining order.
It was represented at oral argument before us that Mr. Van Houten
has since passed away, and that no statement was taken from him
nor was he deposed in this action.

 5 A-1210-15T3
[p]roperty when it passed to her after my death." Mabel added,

"[s]ince that time, and based on [Joy's] mistreatment of me, I

made the decision to convey my interest to my son, Alan." In his

deposition testimony, Alan confirmed that, around 2000 or 2001,

Mabel discussed her wish that Joy have the property and indicated

her actions were intended "[f]or inheritance tax reasons of trying

to save on inheritance taxes."

 On May 22, 2014, defendants moved for partial summary judgment

seeking a declaration that Alan owned an undivided one-half

interest in the property.3 In response, Joy's husband, William

Guber, certified that Mabel "represent[ed] to us numerous times

that she intended to deed her half[-]interest in the property

. . . to Joy[.]" Joy similarly certified that Mabel "specifically

stated on multiple occasions, and over many years, that she had

executed a deed to me conveying her half[-] interest in the

[p]roperty to me, which she delivered to our family attorney, [Van

Houten][,] [] on my behalf." In addition to these verbal

representations, plaintiffs cited documentation that they

contended supported their position, including: the unrecorded

second deed; a letter written by Mabel to Joy and Alan dated

3
 By this point, Mabel had passed away on June 7, 2013, and her
estate was substituted as a defendant. Mabel's will appointed
Alan executor and intentionally made no provision for Joy.

 6 A-1210-15T3
October 10, 2011, in which she stated, "Joy, I have seen to it

that you got this house free and clear;" and a schedule of several

properties owned by the family, dated November 29, 2002, on which

Mabel listed 49 Arlington Avenue as owned by Joy.

 Following oral argument, the Chancery judge entered a July

2, 2014 order declaring Alan to be the owner of the disputed one-

half property interest. The judge found that, even viewing the

facts in the light most favorable to plaintiffs, they did not

establish any of the elements of their claim that Mabel made a

valid inter vivos gift of her remaining interest in the property

to Joy. In an oral opinion, the judge reasoned that actual or

constructive delivery of the deed was "not accomplished by giving

it to your own attorney." The judge also found no evidence of

donative intent. Rather, he noted Mabel herself indicated that,

while it was her intention that Joy might receive the property on

her death, she changed her intention and executed the deed to Alan

that was recorded. The judge also found no evidence that Joy had

accepted the gift. He determined there was "nothing in the record

to indicate Mabel authorized Mr. Van Houten to deliver the deed

on her behalf," and noted "[p]laintiffs' material statement of

facts admit[s] no agent, lawyer, or anyone else acting on Mabel's

behalf ever delivered the [second] deed to her." Ultimately, the

judge concluded:

 7 A-1210-15T3
 So [d]efendant has shown by clear and
 convincing evidence that Mabel did not have
 the intent to make the inter vivos gift and
 that [Joy] did not accept it. There are
 . . . some circumstances, some ambiguity, but
 they're not material to this issue . . . . A
 donee cannot accept a gift until they learn
 of it. The elements of a valid inter vivos
 gift were not met prior to Mabel transferring
 her interest to Alan.

 On July 7, 2014, plaintiffs amended their complaint to seek

a partition of the property and an accounting of partition credits

they claimed for the costs associated with improving and

maintaining the property throughout the years. Defendants

thereafter moved for partial summary judgment on the applicability

of the partition credits. Following oral argument, the trial

court entered an October 24, 2014, which granted the motion in

part and denied it in part. Pertinent to this appeal, the judge

ruled that plaintiffs were not entitled to partition credits from

Alan for any expenses they paid or improvements they made before

Alan took title to the property. The judge also ordered that Alan

was entitled to a partition credit for the rental value of the

property in an undetermined amount. On January 8, 2015, the court

denied plaintiffs' motion for reconsideration.

 On February 12, 2015, the parties entered into a stipulation

that resolved many of the outstanding issues, including a credit

to plaintiffs for expenses they paid in connection with the

 8 A-1210-15T3
property beginning on October 24, 2011, and a monthly rental credit

to Alan on and after that date. The parties agreed that Joy would

have priority to buy out Alan's interest, with the value of the

property being the sole remaining issue for trial. The parties

subsequently resolved the valuation issue, and a final judgment

was entered on March 9, 2015, which further provided that

enforcement of the judgment would be stayed if any party appealed

the trial court's interlocutory orders.

 On March 30, 2015, defendants moved for frivolous litigation

sanctions pursuant to N.J.S.A. 2A:15-59.1 and Rule 1:4-8. On June

4, 2015, the court granted the motion and directed defense counsel

to submit an affidavit of services. Defendants' attorneys then

submitted a request for attorney's fees plus costs totaling

$263,121.16. On October 15, 2015, the court awarded defendants

counsel fees of $20,000. In his accompanying written statement

of reasons, the judge explained, in part:

 The amount sought [by defendants] far
 exceeds any amount the [c]ourt contemplated.
 Significant elements of this litigation cannot
 be deemed frivolous. As to the title issue,
 there was an unrecorded deed to [Joy] as well
 as [Mabel's] statements that she would convey
 her interest in the house to [Joy]. As to the
 partition and claims for credits, those claims
 as a matter of law were not frivolous. . . .
 The [c]ourt is also aware that this is a court
 of equity. To order fees of this magnitude
 or even a substantial portion of the amount
 sought is viewed as punitive. Yet, plaintiff

 9 A-1210-15T3
 continued to cause legal services to be
 rendered by defendant after it should have
 been clear that the positions taken lacked
 merit. For example, seeking to impose on
 [Alan] costs relating to the house at a time
 he did not own it is contrary to the law and
 simply is not logical.

 Plaintiffs now appeal the following orders: (1) the July 2,

2014 grant of partial summary judgment to defendants on the title

issue; (2) the October 24, 2014 grant of partial summary judgment

to defendant on the applicability of partition credits; (3) the

January 8, 2015 denial of plaintiffs' motion for reconsideration;

(4) the June 4, 2015 order granting defendants' motion for

sanctions; and (5) the October 15, 2015 counsel fee award. While

defendants urge us to affirm the first four orders, they have

filed a "protective" cross-appeal of the October 24, 2014 order,

by which they seek to preserve their right to argue for alternative

partition credits that were raised before the trial court.

Defendants also cross-appeal from the October 15, 2015 order on

the basis that the $20,000 fee award is "too low."

 II.

 When reviewing the grant of summary judgment, we analyze the

decision applying the "same standard as the motion judge." Globe

Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Bhagat v.

Bhagat, 217 N.J. 22, 38 (2014)).

 10 A-1210-15T3
 That standard mandates that summary judgment
 be granted "if the pleadings, depositions,
 answers to interrogatories and admissions on
 file, together with the affidavits, if any,
 show that there is no genuine issue as to any
 material fact challenged and that the moving
 party is entitled to a judgment or order as a
 matter of law."

 [Templo Fuente De Vida Corp. v. Nat'l Union
 Fire Ins. Co., 224 N.J. 189, 199 (2016)
 (quoting R. 4:46-2(c)).]

 "To defeat a motion for summary judgment, the opponent must

'come forward with evidence that creates a genuine issue of

material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605

(App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J.

v. State, 425 N.J. Super. 1, 32 (App. Div.), certif. denied, 211

N.J. 608 (2012)), certif. denied, 220 N.J. 269 (2015).

"[C]onclusory and self-serving assertions by one of the parties

are insufficient to overcome the motion." Puder v. Buechel, 183

N.J. 428, 440-41 (2005) (citations omitted). "When no issue of

fact exists, and only a question of law remains, [we] afford[] no

special deference to the legal determinations of the trial court."

Templo Fuente De Vida, supra, 224 N.J. at 199 (citing Manalapan

Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

 It is well-established that state-of-mind issues are

frequently viewed as not suited for disposition through the

pretrial device of summary judgment, and must instead await plenary

 11 A-1210-15T3
testimony at a trial and credibility assessments by the factfinder.

See, e.g., Mayo, Lynch & Assocs., Inc., v. Pollack, 351 N.J. Super.

486, 500 (App. Div. 2002). See also Ruvolo v. Am. Casualty Co.,

39 N.J. 490, 500 (1963) (stating a court should hesitate to grant

summary judgment when it must "resolve questions of intent and

mental capacity").

 On the other hand, if the court determines there is no genuine

issue of material fact, the court is not precluded from granting

summary judgment, notwithstanding issues involving state of mind.

Fielder v. Stonack, 141 N.J. 101, 129 (1995); Bower v. The Estaugh,

146 N.J. Super. 116, 121 (App. Div.) (affirming grant of summary

judgment where court discerns "no evidence of undue influence"),

certif. denied, 74 N.J. 252 (1977). Also, "when the evidence is

so one-sided that one party must prevail as a matter of law, the

trial court should not hesitate to grant summary judgment." Brill

v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting

Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505,

2512, 91 L. Ed. 2d 202, 214 (1986)).

 A.

 Plaintiffs first argue that the trial court erred in granting

partial summary judgment to Alan declaring him the owner of the

disputed one-half interest in the property. They contend that the

court failed to recognize that there were disputed questions of

 12 A-1210-15T3
material fact that required a denial of the summary judgment issue.

We disagree.

 Plaintiffs claim that Mabel made a valid inter vivos gift of

the disputed property interest to Joy. An inter vivos gift creates

an interest in the recipient prior to the donor's death, provided

three elements are met:

 First, there must be actual or constructive
 delivery; that is "the donor must perform some
 act constituting the actual or symbolic
 delivery of the subject matter of the gift."
 Second, there must be donative intent; that
 is "the donor must possess the intent to
 give." Third, there must be acceptance.

 [Bhagat, supra, 217 N.J. at 40 (quoting
 Pascale v. Pascale, 113 N.J. 20, 29 (1988)).]

Our Supreme Court has "also recognized that the donor must

absolutely and irrevocably relinquish 'ownership and dominion over

the subject matter of the gift, at least to the extent practicable

or possible, considering the nature of the articles to be given.'"

Ibid. (quoting In re Dodge, 50 N.J. 192, 216 (1967)).

 "The burden of proving an inter vivos gift is on the party

who asserts the claim." Bhagat, supra, 217 N.J. at 41 (quoting

Sadofski v. Williams, 60 N.J. 385, 395 n.3 (1972). Generally,

"the recipient [of the alleged gift] must show by 'clear, cogent

and persuasive' evidence that the donor intended to make a gift."

Ibid. (quoting Farris v. Farris Eng'g Corp., 7 N.J. 487, 501

 13 A-1210-15T3
(1951)). However, when "the transfer is from a parent to a child,

the initial burden of proof on the party claiming a gift is

slight," and such transfer is presumed to be a gift. Bhagat,

supra, 217 N.J. at 41 (citing Metropolitan Life Ins. Co. v. Woolf,

136 N.J. Eq. 588, 592 (Ch. 1945), aff'd, 138 N.J. Eq. 450 (E. &

A. 1946). Nonetheless, "[a]s the child matures and acquires

experience and independence the presumption weakens and at last

ceases." Peppler v. Roffe, 122 N.J. Eq. 510, 516 (E. & A. 1937).

 In the present case, plaintiffs assert that on numerous

occasions Mabel represented to them that she intended to convey

her half-interest in the property to Joy. Plaintiffs support

these verbal representations with various documents, including the

second and third deeds; Mabel's October 10, 2011 letter in which

she stated, "Joy, I have seen to it that you got this house free

and clear;" and the list of properties prepared by Mabel dated

November 29, 2002, which listed 49 Arlington Avenue as owned by

Joy. Unlike the trial court, for summary judgment purposes, we

view these proofs sufficient to satisfy the element of donative

intent.

 This finding does not, however, end our analysis. "[T]he

evaluation of every motion for summary judgment requires the court

. . . to review the motion record against not only the elements

of the cause of action but also the evidential standard of that

 14 A-1210-15T3
cause of action." Bhagat, supra, 217 N.J. at 40. As noted, to

establish a valid inter vivos gift, plaintiffs must also satisfy

the remaining elements. We agree with the trial court that

plaintiffs failed to adduce sufficient proofs with respect to

those elements to withstand summary judgment. Here, Mabel signed

two backdated deeds purporting to convey her remaining half-

interest to Joy. It is undisputed that neither deed was delivered

to Joy. Rather, after Mabel executed the second deed, she observed

it was on a form that facially revealed it was backdated. She

then requested that her attorney, Van Houten, prepare a replacement

deed to cure the discrepancy. Van Houten did so, and gave this

third deed to Mabel, who in turn gave it to Alan. There is nothing

in the record to indicate that Mabel wished Alan to deliver the

replacement deed to Joy at that time, or at any time prior to

Mabel's death. Even though Van Houten thereafter retained the

second deed (that arguably was superseded by the third deed) in

his files, the record is devoid of any proof that Mabel authorized

Van Houten to deliver the second deed to Joy on her behalf, as the

trial judge correctly concluded. Moreover, the undisputed proofs

show that, until she executed and delivered the fourth deed to

Alan for recording, Mabel did not absolutely and irrevocably

relinquish control of her remaining half-interest in the property.

Dodge, supra, 50 N.J. at 216.

 15 A-1210-15T3
 The record further establishes that Joy was not even aware

of the second deed until 2011 or 2012, or the third deed until

after this litigation commenced. Because she was unaware of the

existence of these deeds, she was not in a position to accept

them. Consequently, the trial court correctly concluded that the

remaining elements of a valid inter vivos gift were not met prior

to Mabel transferring her interest in the property to Alan. For

these reasons, we affirm the July 2, 2014 order.

 B.

 As noted, defendants asserted a counterclaim seeking a

partition of the property, and plaintiffs amended their complaint

to request similar relief following the court's ruling on the

title issue. The power to maintain a suit in partition dates back

to at least the reign of King Henry VIII in England. Wujciak v.

Wujciak, 140 N.J. Eq. 487, 489. (Ch. Div. 1947). It is a right

that may be exercised by an adult tenant, "without regard to the

interests of the other tenants or the inconvenience or hardship

that may result." Ibid. It is equally well settled that as

between or among tenants in common, partition may normally be had

as of course. Ibid.; see also Newman v. Chase, 70 N.J. 254, 261

(1976). Title, whether legal or equitable, and not the right to

immediate possession, is the essential underpinning to a suit for

the partition of realty. Hanson v. Levy, 141 N.J. Eq. 103, 106

 16 A-1210-15T3
(Ch. 1947) (citing Scott v. Scott, 112 N.J. Eq., 195, 198 (Ch.

1933)).

 Partition is an equitable doctrine. Newman, supra, 70 N.J.

at 263. "In the exercise of this power our courts of equity have

not hesitated to exercise discretion as to the particular manner

in which partition is effected between the parties." Ibid.; see

also Baker v. Drabik, 224 N.J. Super. 603, 609 (App. Div. 1988).

Among other things, a court may equitably reduce a tenant's share

in the property where his or her co-tenant has made expenditures

for taxes, mortgage interest, repairs, or other items necessary

to maintain or enhance its value. See Baird v. Moore, 50 N.J.

Super. 156, 164-65 (App. Div. 1958).

 We noted in Baird that generally

 there was no obligation by a cotenant in
 possession who was not excluding his cotenants
 to account to them affirmatively for the value
 of his use and occupation. But it developed
 that when such a cotenant, in a general
 accounting between the parties or on
 partition, sought . . . to enforce
 contribution by the others for their ratable
 share of maintenance expenses advanced by the
 cotenant in possession, many courts deemed it
 equitable that the occupying tenant give
 credit for the value of his use and
 occupation.

 [Id. at 167-68].

We also acknowledged the prevailing rule in most jurisdictions

"that in seeking contribution for maintenance expenses the

 17 A-1210-15T3
cotenant [in possession] will be charged as an offset for the

entirety of the rental value of his own occupation." Id. at 171-

72. Ultimately, we concluded "the dispositive consideration . . .

is the pervading principle . . . where there is a participation

in equity, that the allocation of charges and credits as between

the cotenants be governed by the basic justice and fairness of the

situation." Id. at 173 (citing Woolston v. Pullen, 88 N.J. Eq.

35, 40 (Ch. 1917). See also Esteves v. Esteves, 341 N.J. Super.

197, 200 (App. Div. 2001) (holding "that when plaintiffs sought

reimbursement from defendant for one-half of the costs of occupying

and maintaining the premises, plaintiffs were required to allow

defendant credit for the reasonable value of their occupancy of

the house").

 The case law therefore makes clear that, in this partition

phase of the proceedings, the trial court possessed the authority

to award credit to plaintiffs for expenses they incurred in

maintaining the property, and a credit to Alan for its rental

value. Because partition is a creature of equity, our standard

of review of the terms of partition ordered by a chancery judge

is limited. In such equitable contexts, we will not set aside the

judge's determination unless it is shown to be arbitrary or

capricious or an abuse of discretion. See In re Queiro, 374 N.J.

Super. 299, 307 (App. Div. 2005) (affording "great deference" to

 18 A-1210-15T3
a chancery judge's findings); Lohmann v. Lohmann, 50 N.J. Super.

37, 44-45 (App. Div. 1958) (finding that a trial court's factual

determinations should not be lightly disturbed on appeal).

 Here, at the time Alan and plaintiffs asserted their

respective partition claims, Mabel no longer had title to any

portion of the property. In his October 24, 2014 ruling, the

trial judge determined that "any credits between the parties

commence on the date the two parties took title to the property."

As a result, the judge concluded plaintiffs were not entitled to

partition credits from Alan for any expenses they paid before Alan

took title to a portion of the property, or for any appreciation

in value that may have resulted from their construction of a home

on the property in the 1990s.

 Plaintiffs challenge the judge's determination that a party

to a partition action cannot be held responsible for partition

credits for the period prior to his or her ownership. However,

plaintiffs offer no legal support for their position, nor do we

find any. The judge further found that "the claims that have been

raised prior to 2011, when [Alan] took title, are claims against

Mabel and the Estate." He noted those claims were not

extinguished, but rather "[t]hey are valid claims, or potentially

valid claims, but they are as to the prior owner." Thus, they

could properly be brought against Mabel's estate, but not against

 19 A-1210-15T3
Alan in this partition action. We find no basis, either legal or

equitable, to disturb the trial court's ruling with respect to

partition credits. Consequently, we affirm the October 24, 2014

order, and the January 8, 2015 order denying reconsideration.

 III.

 Finally, plaintiffs appeal the June 4, 2015 order granting

defendants' motion for frivolous litigation sanctions, and the

October 15, 2015 order awarding defendants $20,000 in counsel

fees. Plaintiffs argue that their claims were not frivolous, and

were supported by numerous conversations with Mabel regarding

title to the property, and the unrecorded deeds and other

documentation produced during discovery. Defendants cross-appeal

from the October 15, 2015 order. They contend the $20,000 fee

award is inadequate, and that the trial judge failed to

sufficiently articulate how that fee award was calculated.

 We review the trial court's decision for an abuse of

discretion. Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 407

(App. Div.), certif. denied, 200 N.J. 502 (2009); see also McDaniel

v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011). "[A]buse

of discretion is demonstrated if the discretionary act was not

premised upon consideration of all relevant factors, was based

upon consideration of irrelevant or inappropriate factors, or

 20 A-1210-15T3
amounts to a clear error in judgment." Masone v. Levine, 382 N.J.

Super. 181, 193 (App. Div. 2005) (affirming award of sanctions).

 To support an award against a represented party under N.J.S.A.

2A:15-59.1, the court must find that the claim was pursued in "bad

faith, solely for the purpose of harassment, delay or malicious

injury," N.J.S.A. 2A:15-59.1b(1), or "[t]he non-prevailing party

knew or should have known ... [it was pursued] without any

reasonable basis in law or equity and could not be supported by a

good faith argument for an extension, modification or reversal of

existing law." N.J.S.A. 2A:15-59.1b(2). When a frivolous

litigation claim is based on the lack of a reasonable basis in law

or equity, and the non-prevailing party is represented by an

attorney who presumably advised the party to proceed, an award

cannot be sustained unless the court finds that the party acted

in bad faith in pursuing or asserting the unsuccessful claim.

Ferolito, supra, 408 N.J. Super. at 408. A grant of summary

judgment without more does not support a finding of bad faith by

the losing party. Ibid. Furthermore, the party seeking sanctions

bears the burden to prove bad faith. Ibid.

 Rule 1:4-8(d) authorizes a sanction against an attorney and

pro se party for a violation of Rule 1:4-8(a). It requires an

attorney to certify, based on "knowledge, information, and belief"

after reasonable inquiry, that, among other things:

 21 A-1210-15T3
 (1) the paper is not being presented for any
 improper purpose, such as to harass or to
 cause unnecessary delay or needless increase
 in the cost of litigation;

 . . . .

 (3) the factual allegations have evidentiary
 support or, as to specifically identified
 allegations, they are either likely to have
 evidentiary support or they will be withdrawn
 or correct if reasonable opportunity for
 further investigation or discovery indicates
 insufficient evidentiary support[.]

 The rule and statute must be interpreted strictly against the

applicant seeking an award of fees. LoBiondo v. Schwartz, 199

N.J. 62, 99 (2009); DeBrango v. Summit Bancorp, 328 N.J. Super.

219, 226 (App. Div. 2000). This strict interpretation is grounded

in "the principle that citizens should have ready access to . . .

the judiciary." Belfer v. Merling, 322 N.J. Super. 124, 144 (App.

Div.), certif. denied, 162 N.J. 196 (1999). "The statute should

not be allowed to be a counterbalance to the general rule that

each litigant bears his or her own litigation costs, even when

there is litigation of 'marginal merit.'" Ibid. (citation

omitted). Sanctions should be awarded only in exceptional cases.

Iannone v. McHale, 245 N.J. Super. 17, 28 (App. Div. 1990). "When

the [non-prevailing party's] conduct bespeaks an honest attempt

to press a perceived, though ill-founded and perhaps misguided,

 22 A-1210-15T3
claim, he or she should not be found to have acted in bad faith."

Belfer, supra, 322 N.J. Super. at 144-45.

 We recognize that even if there is a good faith basis to

commence a lawsuit, an attorney is obliged to withdraw it once it

becomes apparent the action is frivolous, and if the attorney does

not, he or she may be liable for sanctions to compensate the other

party for expenses incurred after that point in time. DeBrango,

supra, 328 N.J. Super. at 229-30.

 In initially deciding to award sanctions, the trial judge

reasoned:

 Primarily, Joy argues that her claims
 were motivated by goals of great importance
 to her, the preservation of her marital home,
 and the recovery of credits for enhancing the
 value of the property and paying the carrying
 costs. . . . However, these intentions are
 insufficient to justify the continuous filing
 of baseless claims. This [c]ourt has rejected
 every single argument advanced by Joy.

 In large part, the judge retreated from his earlier findings

when confronted with defendants' $263,121.16 fee request. In his

written statement of reasons accompanying the October 15, 2015

order, the judge found that "significant elements of this

litigation cannot be deemed frivolous." The judge noted that

plaintiffs' title claim was supported by the unrecorded second

deed and Mabel's statements. The judge also found plaintiffs'

 23 A-1210-15T3
claims for partition and credits "as a matter of law were not

frivolous."

 Having reviewed the record, we conclude plaintiffs' claims

had some legal and factual foundation. That the trial court

ultimately disagreed, and dismissed a portion of those claims on

summary judgment, without more, did not establish that plaintiffs

acted in bad faith so as to necessitate an award of attorney's

fees for frivolous litigation. Ferolito, supra, 408 N.J. Super.

at 408. Accordingly, we are constrained to reverse and vacate the

June 4, 2015 and October 15, 2015 orders.

 Affirmed in part and reversed in part.

 24 A-1210-15T3